[No. F060737. Fifth Dist. Aug. 1, 2011.]

CITY OF WOODLAKE et al., Plaintiffs and Respondents, v.
TULARE COUNTY GRAND JURY, Defendant and Appellant.

COUNSEL

Phillip J. Cline, District Attorney, Don H. Gallian and Shani D. Jenkins, Assistant District Attorneys, Barbara J. Greaver and John F. Sliney, Deputy District Attorneys, for Defendant and Appellant.

Fike & Watson and Thomas T. Watson for Plaintiff and Respondent City of Woodlake.

No appearance for Plaintiffs and Respondents Woodlake Police Department and John Zapalac.

OPINION

DETJEN, J.—The Tulare County Grand Jury appeals from an order quashing a subpoena duces tecum it issued to the Woodlake Police Department. The trial court based its ruling on the fact that the subpoena duces tecum was served without a Code of Civil Procedure section 1985 affidavit of good cause.[1] We reverse the trial court's order. When a grand jury seeks records of a public agency to which it has been given express statutory access, its demand for production of those documents is not a section 1985 subpoena duces tecum. As such, a supporting affidavit of good cause is not required.

## FACTS AND PROCEDURAL HISTORY

On January 16, 2009, members of the Woodlake police force were shooting firearms at a shooting range owned by the Exeter Police Department. A bullet, apparently fired by one of the Woodlake officers, left the range and struck a civilian, Leland Perryman, approximately a mile away. Appellant Tulare County Grand Jury (hereafter the grand jury) sought to investigate certain aspects of this incident. On April 8, 2010, it issued subpoenas to several officers of the Woodlake Police Department and to its chief, John Zapalac. It also issued a subpoena duces tecum to the Woodlake Police Department ordering the department to present the following documents for inspection by the grand jury: "1. Range Rules used at the Exeter Shooting Range. [¶] 2. Course layout for the training exercise used on 1-16-09 at the Exeter Range. [¶] 3. Certification of the range master who planned this training exercise. [¶] 4. Internal Investigation report of 1-16-09 incident. [¶] 5. Training schedule for all Police Officers who used the Range on 1-16-09."

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

The trial court's order refers to section 1085, but this clearly is a typographical error. The parties' discussion on appeal refers exclusively to section 1985.

The City of Woodlake, the Woodlake Police Department, and John Zapalac brought an action that was ultimately treated as a motion to quash the subpoenas. The grand jury opposed the motion. By written order filed June 3, 2010, the trial court determined that the subpoenas directed to the individuals were valid and enforceable. It concluded, however, that the subpoena duces tecum was invalid because it failed to comply with section 1985.[2]

## DISCUSSION

### A. *Appealability.*

Respondent contends the order quashing the subpoena duces tecum is not appealable because it "is not a final order as there has been no final adjudication between the parties." It cites *Ahrens v. Evans* (1941) 42 Cal.App.2d 738, 739 [109 P.2d 991], in support of this contention.

■ *Ahrens v. Evans, supra,* 42 Cal.App.2d 738, involved an appeal from an order denying a motion to quash a subpoena served on a nonparty in proceedings to discover property upon which the judgment creditor could execute. The appellate court determined that the order was not appealable because it was an interim order in a supplementary proceeding. (*Id.* at p. 739.) "In the absence of statutory authority therefor an appellate tribunal should not review an order of the lower court unless it be a final determination of the subject matter." (*Ibid.*)

In the present case, however, the appeal is not from an order enforcing the subpoena nor is it merely an order concerning discovery in an ongoing action. Instead, this appeal is from an order denying enforcement of the subpoena in which enforcement or nonenforcement was the only issue before the superior court. The motion to quash was, in effect, a freestanding proceeding that sought no further relief, similar to a motion to obtain a subpoena to aid out-of-state litigation: "Generally, discovery orders are not appealable. [Citation.] That generalization is inapplicable, however, where the order is ancillary to litigation in another jurisdiction and operates as the last word by a California trial court on the matters at issue." (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 885–886 [60 Cal.Rptr.3d 501].) Similarly, in *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 13 [118 Cal.Rptr.3d 571, 243 P.3d 575], where the city sought an order to enforce an investigative subpoena by a legislative body, the resulting order was immediately appealable even though a similar civil discovery order would not have been. The Supreme Court stated: "[W]e . . . have rejected the analogy between investigative subpoenas and discovery orders." (*Ibid.*)

---

[2] Only the City of Woodlake has appeared as a respondent in this appeal.

■ In the present case, although the parties have not provided us with the order accomplishing the dismissal of the original petition and complaint filed by respondent, it is clear the trial court, by stipulation or otherwise, dismissed those two causes of action and treated the matter as a special proceeding to quash the subpoenas issued by appellant.[3] Respondent does not contend in this appeal that its own petition, as initially framed, is still pending. Nor does respondent contend further proceedings are contemplated in the trial court, the traditional criterion for finality of an order. (See *Dana Point Safe Harbor Collective v. Superior Court, supra*, 51 Cal.4th at p. 5.) We conclude that the order of June 3, 2010, terminated the entire proceeding on the merits and is appealable as a final judgment. (§ 904.1, subd. (a)(1).)

## B. *Section 1985*

■ Section 1985, subdivision (a) defines subpoenas *for purposes of civil proceedings*: "The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness. It may also require a witness to bring any books, documents, or other things under the witness's control which the witness is bound by law to produce in evidence." (See also *Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072, 1076 [21 Cal.Rptr.2d 840].)

A subpoena that requires the production of records, documents, or other things is known as a subpoena duces tecum. (Black's Law Dict. (9th ed. 2009) p. 1563, col. 2.) Section 1985, subdivision (b) requires that, *in a civil proceeding*, a subpoena duces tecum "before trial" shall be served with a "copy of an affidavit . . . showing good cause for the production of the matters and things described in the subpoena, specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his or her possession or under his or her control." The trial court based its decision on this subdivision. An investigation by a grand jury is not, however, a civil proceeding.

---

[3] The city, together with the Woodlake Police Department and Zapalac, filed an action captioned "Petition for Writ of Prohibition and Complaint for Declaratory Relief." The action sought a stay of enforcement of the subpoenas. The action also sought "a judicial determination of the duties and obligations of CITY, and those of its employees, regarding the information sought" by the grand jury. A few days later, the grand jury filed an application for an order to show cause to enforce the subpoena duces tecum. The trial court consolidated the actions and deemed them to constitute a motion to quash the subpoenas.

## C. *The Civil Grand Jury; Its Function and Its Statutory Powers.*

■ One of the basic functions of the grand jury is to "act as the public's 'watchdog' by investigating and reporting upon the affairs of local government (e.g., [Pen. Code,] §§ 919, 925 et seq.)." (*McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1170 [245 Cal.Rptr. 774, 751 P.2d 1329] (*McClatchy*).) This "watchdog role is by far the one most often played by the modern grand jury in California." (*Ibid.*)

■ A civil grand jury is composed of "citizens of the county before a court of competent jurisdiction" and "shall be charged and sworn to investigate or inquire into county matters of civil concern . . . ." (Pen. Code, § 888.) Its power is that "which the Legislature has deemed appropriate." (*McClatchy, supra*, 44 Cal.3d at p. 1179.) The grand jury may investigate citizen complaints, but it may also simply elect to review the operations of an agency of local government within its jurisdiction, unrelated to any particular complaint. (79 Ops.Cal.Atty.Gen. 185, 195–196 (1996).) Investigation into the conduct and actions of local agencies is one of the key statutory powers conferred on civil grand juries; they "shall investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county" (Pen. Code, § 925) and "may" do so for "any . . . city or joint powers agency" in the county (*id.*, § 925a). In conjunction with this latter function, the "grand jury may at any time examine the books and records of any incorporated city or joint powers agency located in the county." (*Ibid.*) This is not merely a search for wrongdoing, but may involve recommendations for the "method or system of performing the duties" of city agencies. (*Ibid.*) In addition, the grand jury "may investigate and report upon the needs of all county officers in the county, including the abolition or creation of offices and the equipment for, or the method or system of performing the duties of, the several offices. Such investigation and report shall be conducted selectively each year." (*Id.*, § 928.)

■ In all its functions, the grand jury operates under the general supervision of the courts and is deemed to be a judicial body or an instrumentality of the courts. (*McClatchy, supra*, 44 Cal.3d at p. 1172; *Dustin v. Superior Court* (2002) 99 Cal.App.4th 1311, 1322 [122 Cal.Rptr.2d 176].) It is, broadly speaking, "an integral part of the court system, subject to the court's general supervision." (*People v. Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 439 [119 Cal.Rptr. 193, 531 P.2d 761].) An investigation by the grand jury is not a civil proceeding for purposes of the statutory framework for discovery in civil proceedings. The grand jury is not adjudicatory, and it does not provide relief to parties who appear before it, which are the fundamental elements of a civil proceeding. (See §§ 22 [action defined], 23 [special proceeding defined], 30 [civil actions].)

D.   *Subpoenas Duces Tecum and Good Cause Affidavits Apart from Grand Jury Investigations.*

Additionally, good cause affidavits are not always required. For example, under the statutes providing for pretrial discovery in civil proceedings, a party may seek the production of business records for copying. (§ 2020.410, subd. (a).) "A deposition subpoena that commands only the production of business records for copying need not be accompanied by an affidavit or declaration showing good cause for the production of the business records designated in it." (§ 2020.410, subd. (c).) Also, the governing statute in administrative law proceedings authorizes subpoenas duces tecum without a section 1985 good cause affidavit. (*Sehlmeyer v. Department of General Services, supra*, 17 Cal.App.4th at pp. 1076–1077.) In criminal matters, the court may issue subpoenas duces tecum under court-made law that is not subject to the restriction of section 1985. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 534, 540 [113 Cal.Rptr. 897, 522 P.2d 305].)

█   Thus, denomination of a command for production of documents as a "subpoena duces tecum" is merely a general and accepted title for such a command and is not, in and of itself, an invocation of the good cause affidavit requirement of section 1985.

E.   *Subpoenas Duces Tecum Issued by Civil Grand Juries.*

█   In *M. B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1394 [127 Cal.Rptr.2d 454], the court held that a subpoena duces tecum issued by a criminal grand jury was not subject to the requirements of section 1985 because neither criminal proceedings nor criminal grand jury proceedings were "civil proceedings" to which section 1985 applied. In declining to impose a section 1985 good cause affidavit requirement for grand jury subpoenas duces tecum, the court stated: "[W]e conclude no affidavit should be required because the very purpose of a grand jury investigation would be vitiated if a subpoena duces tecum had to be justified by a threshold good cause showing." (*M. B. v. Superior Court, supra*, 103 Cal.App.4th at p. 1394.) Quoting the United States Supreme Court, the appellate court reiterated that the purpose of the grand jury is " ' "investigation and inquisition," ' " which should not be limited in advance by questions about the probable result of the investigation. (*Id.* at pp. 1394–1395.)

In the context of a civil grand jury's investigation of a local police agency, County Counsel of San Luis Obispo County submitted a request for an

opinion of the Attorney General: "When a grand jury is conducting a civil 'watchdog' investigation of a local police agency, does it have the right to examine peace officer personnel records, including citizens' complaints, or information compiled from such records, without first obtaining issuance of a subpoena or court order?" (79 Ops.Cal.Atty.Gen., *supra*, at p. 185.) The Attorney General opined that such police personnel records constitute records of a public agency and must be open for the grand jury's inspection without the necessity of a subpoena or court order. (*Id.* at p. 195.) Further, "no specific case or complaint would be necessary to establish a grand jury's right to examine such records." (*Id.* at p. 196.)[4]

■ For purposes of convenience, and in accord with the traditional common law designation of a command for production of records as a subpoena duces tecum, the grand jury may choose to entitle its command as such, but it does not, by doing so, adopt the limitations of section 1985 that are applicable to civil proceedings.

F. *Good Cause Requirement Apart from Section 1985.*

■ Penal Code section 832.7 provides that peace officer and custodial officer personnel records are confidential. Government Code section 6254, subdivision (f), while not making such records "confidential," partially exempts from disclosure under the Public Records Act certain police investigative files. (See Gov. Code, § 6253 [general duty of disclosure of public records].) Respondent relies on both of these provisions as establishing a requirement that the grand jury should not have access to the records without a showing of good cause.

■ We disagree. First, Penal Code section 832.7 expressly provides that its designation of confidentiality of peace officer personnel records "shall not apply to investigations or proceedings concerning the conduct of peace officers . . . conducted by a grand jury." Additionally, the grand jury does not seek records pursuant to the authority of the Public Records Act, that is, as a member of the general public; instead, it acts pursuant to the express statutory authority afforded to grand juries by Penal Code sections 925 and 925a.

---

[4] " 'Opinions of the Attorney General, while not binding, are entitled to great weight. [Citations.] In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute" ' " " 'and that if it were a misstatement of the legislative intent, "some corrective measure would have been adopted." ' " (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].)

In *People v. Superior Court* (2003) 107 Cal.App.4th 488, 493–494 [132 Cal.Rptr.2d 144], this court held that, when a civil grand jury wanted to inspect juvenile court records pertaining to a particular case, the grand jury was required to petition the juvenile court under Welfare and Institutions Code section 827, former subdivision (a)(1)(M) (now subd. (a)(1)(P)), showing good cause for access to the otherwise confidential records. We rejected the grand jury's contention that its investigative function overrode the confidentiality requirements of Welfare and Institutions Code section 827. (See *People v. Superior Court, supra*, 107 Cal.App.4th at pp. 493–494.) We did not hold, nor did we imply, that the grand jury was required to obtain the juvenile court records by means of a section 1985 subpoena duces tecum and, in fact, the case was before the trial court on a petition pursuant to Welfare and Institutions Code section 827, not on a motion to enforce a subpoena duces tecum. (*People v. Superior Court, supra*, 107 Cal.App.4th at p. 490.) This court simply held that the grand jury was not among the list of persons and entities permitted by the Legislature in Welfare and Institutions Code section 827 to have access to juvenile files without a showing of good cause. (*People v. Superior Court, supra*, 107 Cal.App.4th at p. 496.) To the contrary, according to the court, the Legislature has intentionally omitted the grand jury from the rather lengthy list of persons and entities who have access to confidential juvenile court files without "an adequate showing of need and relevance." (*Id.* at p. 494.)

█ There is no similar express legislative designation of "police records" as inaccessible to the grand jury without a showing of good cause. To the contrary, as set forth above, the Legislature expressly provided that police personnel records are *not* confidential when sought by a grand jury investigating the conduct of police officers. (Pen. Code, § 832.7, subd. (a); see *Fagan v. Superior Court* (2003) 111 Cal.App.4th 607, 619, fn. 11 [4 Cal.Rptr.3d 239].) In the absence of either a specific legislatively established protocol for a grand jury to obtain access to records of a public agency (such as legislation making § 1985 applicable to grand jury proceedings) or a legislative restriction on the records sought in the present case, we conclude the grand jury was entitled to direct the Woodlake Police Department and its chief to deliver the records to the grand jury for inspection. That the grand jury chose to denominate its directive as a subpoena duces tecum did not superimpose upon that directive the formal requirements of section 1985.

G. *Secrecy of Grand Jury Proceedings.*

In an argument for which it cites no legal authority, respondent contends that a showing of good cause for access to the records in this particular case is necessary because grand jury secrecy has been compromised. In support of

its argument, respondent quotes what it terms a "finding of fact" by the trial court, set forth in the court's written order quashing the subpoena duces tecum: "Here, per the declarations, the jury is function[ing] in its capacity of investigating a citizen's complaint. That citizen, having filed for public record a declaration detailing the complaint, which was promptly repeated in the press, has abrogated any chance of confidentiality relating to the charges. The People's action in filing a Court proceeding to enforce the subpoenas, which was preceded by City's filing an action to stop or delay the investigation, has also spread the entire subject matter over the newspapers."

The secrecy of grand jury proceedings is deeply rooted in the common law. (*McClatchy, supra*, 44 Cal.3d at p. 1173.) "That the Legislature intended to incorporate this well-established heritage of secrecy into the present grand jury system is plainly and amply shown in the governing provisions of the Penal Code." (*Ibid.*) Not only do the grand jurors meet in "a private room" (Pen. Code, § 915) and take an oath to maintain the secrecy of the proceedings (see *id.*, § 911), unauthorized disclosure of grand jury evidence is a misdemeanor (*id.*, § 924.1). Secrecy of civil grand jury proceedings is further guaranteed by the requirement that the grand jury submit any proposed final report to the superior court, which must review the report and remove certain raw evidentiary materials from the report. (*McClatchy, supra*, 44 Cal.3d at p. 1184.)

It clearly would defeat the purpose of civil grand juries if an agency the grand jury was charged with monitoring and investigating could avoid or limit the investigation merely by disclosing the fact of the investigation. Yet, that is the rule respondent urges upon us. It was respondent which made public the fact of the grand jury subpoenas (and the subject matter of the investigation) when it filed its petition and complaint, not under seal, on April 16, 2010. Thereafter, Perryman filed a motion to intervene in respondent's action; although that motion is not a part of our record, it is the subject of a hearing contained in the reporter's transcript filed in this case. The content of the declaration in support of the motion for intervention "was promptly repeated in the press," as stated by the trial court. By contrast, the grand jury's motion to enforce the subpoenas, with its supporting papers, did not disclose anything about the grand jury investigation. Thus, there is no factual basis for respondent's claim that grand jury secrecy was compromised by the grand jury, nor that disclosures by any other persons will limit the effectiveness of the statutory requirements of secrecy in the matters now pending before the grand jury.

## DISPOSITION

The order of June 3, 2010, is reversed insofar as it quashed, or declined to enforce, the grand jury subpoena duces tecum, and to the extent it required the grand jury to attach "an affidavit showing good cause for the production" of documents as a condition of the issuance of any further subpoenas directing respondent City of Woodlake, or its police department, to produce records.

Cornell, Acting P. J., and Franson, J., concurred.