[No. B229369. Second Dist., Div. Six. Nov. 28, 2011.]

JOSHUA GRAHAM PACKER, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Stephen P. Lipson, Public Defender, and Michael C. McMahon, Chief Deputy Public Defender, for Petitioner.

Law Offices of J. T. Philipsborn and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Gregory D. Totten, District Attorney, and Michelle J. Contois, Deputy District Attorney, for Real Party in Interest.

Kamala D. Harris, Attorney General, Dane R. Gillette and Pamela C. Hamanaka, Assistant Attorneys General, A. Scott Hayward and Keith H. Borjon, Deputy Attorneys General, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**PERREN, J.**—Joshua Graham Packer seeks extraordinary writ relief from the trial court's order denying his Penal Code section 995[1] motion to dismiss the indictment charging him with three counts of first degree murder (§ 187) and other offenses. The prosecution is seeking the death penalty. (§ 190.2, subd. (a)(3).) Packer contends the indictment must be set aside on the ground of grand juror bias. He asserts that our Supreme Court's pronouncement that such claims are not cognizable (*People v. Kempley* (1928) 205 Cal. 441, 446–448 [271 P. 478] (*Kempley*)) is no longer controlling because intervening authority suggests he has a due process right to an unbiased grand jury. We need not decide whether we are bound to follow *Kempley* because we agree with the trial court's conclusion that Packer fails to demonstrate the bias of which he complains. Accordingly, we shall deny the petition.

[1] All further undesignated statutory references are to the Penal Code.

## BACKGROUND

On May 20, 2009, Brock and Davina Husted were stabbed to death during a home invasion robbery by a man wearing a motorcycle helmet with a visor that covered his face. The Husteds' unborn child was also killed. Their nine-year-old son witnessed the robbery and found his parents' bodies after the killer fled.

DNA samples were recovered from Brock Husted's fingernail scrapings and a motorcycle helmet visor, which was found under Brock's body. DNA profiles extracted from this evidence were uploaded into the Combined DNA Index System (CODIS). The police also took possession of several items from the Husteds' residence and business, including two desktop computers, one notebook computer, three cellular phones, two external storage drives, and two SD (secure digital) multimedia cards. Detective Billy Hester from the Ventura County Sheriff's Office submitted these items to the Southern California High Tech Task Force (the Task Force)[2] for analysis. A cellular phone seized from another individual's residence, a surveillance system from a store that sells motorcycle helmets, and the sign-on and password information for Davina Husted's Facebook account were also submitted to the Task Force for analysis. The Task Force analyzed each of the items and submitted a report to the sheriff's department. None of the information proved relevant to the crimes or otherwise assisted the sheriff's department in identifying the perpetrator of the murders.

On January 14, 2010, Packer was arrested on unrelated felony charges. His DNA profile was subsequently obtained from a buccal swab (§ 296, subd. (a)(2)(C)). When the profile was uploaded into CODIS, it was found to match the profile obtained from the motorcycle helmet visor by a statistical probability of one in 260 billion. The profile also matched the one obtained from Brock Husted's fingernail scrapings by a probability of one in 1.1 billion.

A grand jury subsequently returned an indictment charging Packer with three counts of first degree murder, two counts of first degree robbery (§ 211), and one count of first degree burglary (§§ 459, 460, subd. (a)). The murder counts include allegations that Packer personally used a deadly weapon (§ 12022, subd. (b)(1)), and committed the crimes while engaged in the commission of robbery or attempted robbery (§ 190.2, subd. (a)(17)(A)), and burglary or attempted burglary (§ 190.2, subd. (a)(17)(G)). The indictment

---

[2] The Task Force is a government agency that analyzes computers, cell phones, and other electronic and cyber-related evidence collected by the sheriff's department in its investigation of criminal matters.

also includes a multiple-murder special-circumstance allegation, which makes Packer eligible for the death penalty. (§ 190.2, subd. (a)(3).)

Packer moved to dismiss the indictment under section 995, claiming among other things that one of the grand jurors was biased because she works for the Task Force and had handled potential evidence in the case. The trial court denied the motion. Packer filed the instant writ petition, which we summarily denied. Our Supreme Court granted review and directed us to issue an order to show cause why Packer is not entitled to relief on the claim of grand juror bias.[3]

## DISCUSSION

Packer contends the indictment must be set aside because a grand juror, identified as Juror No. 2, is employed by the Task Force and in the course of that employment received at least one of the items Detective Hester submitted to the Task Force for analysis. He argues that this juror was inherently biased against him because she is a "member of the prosecution team." According to Packer, Juror No. 2's employment also created a "disabling conflict of interest" that amounts to bias because she is supervised by an investigator from the Ventura County District Attorney's Office. Although Packer acknowledges our Supreme Court's holding that an indictment cannot be set aside on the ground of grand juror bias (*Kempley, supra*, 205 Cal. at pp. 446–448), he urges us to reject that authority and find that Juror No. 2's bias amounts to a violation of his due process rights under the state and federal Constitutions.

As we shall explain, we need not resolve the unsettled issue whether Packer had a due process right to an unbiased grand jury because he fails to demonstrate that he suffered any actual bias. His motion to dismiss the indictment on that ground was thus properly denied.

### I.

### *Background*

The indictment against Packer was returned by a special grand jury impaneled to hear criminal matters pursuant to section 904.6.[4] Prior to being

---

[3] Packer's writ petition challenged the trial court's denial of his section 995 motion on additional grounds, but his petition for review was limited to the issue of grand juror bias.

[4] Ventura County impanels special grand juries four times a year using names obtained at random from the list of potential trial jurors. (§ 904.6, subd. (b).) Each special grand jury sits for approximately 90 days.

impaneled, Juror No. 2 informed the court that she was employed by the sheriff's department and worked at the Task Force in a "[s]ecretarial job" doing "[p]ayroll, reports." Juror No. 2 brought this to the court's attention because she was "worried about who's going to be doing my job at work because it's going to be a long month for me to be, you know, coming back and forth here." The court posited: "You know I don't know that working for the sheriff's office in that capacity, even though you work for the task force, would disqualify you from being on the grand jury. Your concern is who will do your job while you're gone?" Juror No. 2 replied in the affirmative, and added that she was "the one who's doing the time cards for the narcotics side" while a secretary who worked for another agency was on vacation. Juror No. 2 also referred to the fact that she had a brief vacation scheduled for the following week, which would require her to miss one day of grand jury service. The court concluded: "I don't think that would disqualify you from serving . . . . I understand it would be inconvenient for your employer to have you gone but I think you can serve."

When the grand jury was subsequently called to hear the instant matter, the prosecutor began by stating the general allegations as set forth in the complaint and proceeded to give the names of the witnesses he intended to call. One of the potential witnesses he named was Billy Hester, the detective who submitted the electronic items to the Task Force that were collected from the Husteds' residence and business. The jury foreperson then stated: "The nature of the matter to be heard and the names of the persons the district attorney anticipates calling to testify in the matter have been outlined above. Any members of the Grand Jury who have a state of mind in reference to the indictment proceeding as to any of the witnesses or persons mentioned above which will prevent him or her from acting impartially and without prejudice to the substantial rights of the parties shall now retire from this hearing." The foreperson asked, "Do any of you know socially or have any of you heard anything about any of the persons named which would cause you not to render an unbiased decision?"

Juror No. 2 responded that she knew Detective Hester because "[h]e comes in my office sometimes." The prosecutor asked Juror No. 2 whether "anything about your having known him would make it difficult for you to ren[d]er an unbiased decision in this matter," and she responded, "No."

Juror No. 2 subsequently added, "I have a question . . . [b]ecause I work at the High Tech Task Force. I just received the case—the evidence, but I didn't do the forensic. . . . Is that going to be okay? I just want to let you know." The following colloquy ensued:

"[Prosecutor]: Okay. So you didn't review any of the evidence?

"[Juror No. 2]: No. I don't do that. I'm not a forensic guy. I just receive incoming evidence.

"[Prosecutor]: Okay. And when you say 'receive it,' what does that mean?

"[Juror No. 2]: And put it in our evidence room, insert it in the system. That's all I do.

"[Prosecutor]: Okay.

"[Juror No. 2]: To receive cases in our office.

"[Prosecutor]: Okay. So like storing a hard drive from a computer? Something like that maybe?

"[Juror No. 2]: I don't do that.

"[Prosecutor]: I'm trying to get—I want to have a clear record of what you're storing.

"[Juror No. 2]: Like, for example, if there's like computer evidence or cell phone evidence. What I do, I enter it in the system and then put it in our evidence room for that case. But I don't do the forensic for that.

"[Prosecutor]: Okay. Is it a physical piece of evidence you're handling and putting in an evidence room?

"[Juror No. 2]: Yes.

"[Prosecutor]: And what type of physical piece of evidence? Is it documents?

"[Juror No. 2]: I think we have—I don't remember if it's just the cell phone or computer.

"[Prosecutor]: Okay. And what I'm getting at, is it documents or is it like a disk or a hard drive to a computer? What is a physical thing you're handling and putting in the room?

"[Juror No. 2]: Computer and cell phones.

"[Prosecutor]: Okay.

"[Juror No. 2]: That's all.

"[Prosecutor]: So this is hardware?

"[Juror No. 2]: Yeah.

"[Prosecutor]: You're not examining what's inside?

"[Juror No. 2]: No. No.

"[Prosecutor]: Okay. And you believe that you might have handled something related to the investigation of the murder of the Husteds? Is that what you're saying or—I'm not sure—

"[Juror No. 2]: Well, I just want to let you know that we received this case, but I didn't do anything on this case.

"[Prosecutor]: Okay.

"[Juror No. 2]: Just to receive—

"[Prosecutor]: Okay. You say 'we,' though. I'm interested—I need to make a clear record. Did you personally hold something that had to do with this case?

"[Juror No. 2]: Just to put it in the evidence room.

"[Prosecutor]: Do you remember even what it was that you held?

"[Juror No. 2]: No, not at all. It's been like three or four months ago, I think, when it happened.

"[Prosecutor]: Okay.

"[Juror No. 2]: Or six months ago.

"[Prosecutor]: So in the normal course of your job, you might handle an actual physical cell phone or a hard drive for a computer and you would make a note that it's been received and then you put it in a room?

"[Juror No. 2]: Evidence room, yes.

"[Prosecutor]: Okay.

"[Juror No. 2]: And then the forensic guy will get it in the evidence room to do the forensic. But after that I don't know anything about it.

"[Prosecutor]: Okay. And you believe you might have done something like that in this case? You yourself? Do you understand the question?

"[Juror No. 2]: No, I don't.

"[Prosecutor]: Do you believe that in—relative to this investigation that someone gave you a physical—

"[Juror No. 2]: Evidence.

"[Prosecutor]: —piece of evidence, either a hard drive or a phone or something, and you took that and put it in the evidence room? Do you believe that you did that yourself?

"[Juror No. 2]: Yeah, I did. I think—as far as I know, we received just one computer.

"[Prosecutor]: A computer.

"[Juror No. 2]: Yeah, that they took from his house or something.

"[Prosecutor]: And you have no knowledge of what was on that computer?

"[Juror No. 2]: Oh, no. Huh-uh.

"[Prosecutor]: So anything about that event that would make it difficult for you to render an unbiased decision in this matter?

"[Juror No. 2]: No."

After the indictment was returned, Packer moved to dismiss it on the ground, among others, that Juror No. 2 was biased against him. The prosecution opposed the motion, asserting that (1) the indictment was not subject to being set aside for grand juror bias pursuant to *Kempley* and (2) Packer had failed to establish that Juror No. 2 was actually biased. In denying the motion on the latter ground, the trial court noted Juror No. 2's statement that her employment did not affect her ability to be impartial and added, "I can't imagine how . . . having served on the task force would in any way affect any decision that [she'd] make in this case given the evidence. So I don't think that that has any significance at all."

## II.

### *Grand Juror Qualifications and the Duty to Withdraw if Biased*

■ The qualifications for service as a grand juror in California are prescribed by statute and relate to matters such as citizenship, age, mental competency, intelligence, and character. (§ 893, subd. (a).)[5] The trial court determines these qualifications by personal interview and examination. (§§ 896, subd. (a), 904.6, subd. (b).) An individual who is otherwise qualified is nevertheless deemed incompetent to serve only if he or she (1) is currently serving as a trial juror in another case; (2) has been discharged as a grand juror within the preceding year; (3) has been convicted of either malfeasance in office or any felony; or (4) is an elected public officer. (§ 893, subd. (b); Code Civ. Proc., § 203, subd. (a).)

■ Any person found qualified in accordance with the statutory factors must be accepted for service "unless the court, on the application of the juror and before he is sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of the Code of Civil Procedure." (§ 909.) Code of Civil Procedure section 204 provides that a person who is otherwise eligible for service may be excused "only for undue hardship, upon themselves or upon the public . . . ." (*id.*, subd. (b).) The law also makes clear that "[n]o challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when made by the court for want of qualification, as prescribed in Section 909." (§ 910.) Peace officers are expressly exempt from service. (§ 894; Code Civ. Proc., § 219.)[6]

■ Although the court's statutory authority to excuse potential grand jurors is limited by section 909, all grand jurors have a statutory duty to withdraw from serving on a particular case if they harbor a bias or prejudice against the defendant. Section 939.5 provides: "Before considering a charge against any person, the foreman of the grand jury shall state to those present the matter to be considered and the person to be charged with an offense in connection therewith. He shall direct any member of the grand jury who has a

---

[5] Subdivision (a) of section 893 provides: "A person is competent to act as a grand juror only if he possesses each of the following qualifications: [¶] (1) He is a citizen of the United States of the age of 18 years or older who shall have been a resident of the state and of the county or city and county for one year immediately before being selected and returned. [¶] (2) He is in possession of his natural faculties, of ordinary intelligence, of sound judgment, and of fair character. [¶] (3) He is possessed of sufficient knowledge of the English language."

[6] It is undisputed that Juror No. 2 is not a "peace officer," as that term is statutorily defined. (§§ 830.1, 830.2, 830.33.)

state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire. Any violation of this section by the foreman or any member of the grand jury is punishable by the court as a contempt."

■ The foreperson's failure to comply with this requirement is not, however, a ground for setting aside an indictment. (*People v. Jefferson* (1956) 47 Cal.2d 438, 442 [303 P.2d 1024], superseded by statute on another ground as stated in *People v. St. Martin* (1970) 1 Cal.3d 524, 535 [83 Cal.Rptr. 166, 463 P.2d 390] [interpreting former § 907; now § 939.5]; *Kempley, supra*, 205 Cal. at p. 447.)

### III.

### *Section 995 and* Kempley

■ Section 995 states (subject to an exception not pertinent here) that an indictment shall be set aside on a defendant's motion if either (1) "it is not found, endorsed, and presented as prescribed in" the Penal Code or (2) the record demonstrates "[t]hat the defendant has been indicted without reasonable or probable cause." Prior to 1911, California law also provided that an indictment could be set aside upon a showing that one or more of the grand jurors were biased or prejudiced against the defendant. (Former §§ 895–901, 995;[7] *People v. Landis* (1903) 139 Cal. 426, 429–430 [73 P. 153].) In 1911, the Legislature amended the statutory scheme to eliminate these provisions. (*Kempley, supra*, 205 Cal. at pp. 446–448; *People v. Schmidt* (1917) 33 Cal.App. 426, 434–435 [165 P. 555].) Our Supreme Court explained: "Prior to 1911 an indictment could be set aside upon any ground which would have been good ground for challenge either to the panel or to an individual grand juror on account of disqualification for bias [citations]. But in that year the provision of the code for the setting aside of the indictment on the ground of the bias of the grand juror was abolished. [Citation.] In view of the change in the law in 1911 it must be held that since that time the bias of a grand juror has not been a ground for setting aside an indictment." (*Kempley*, at pp. 447–448.) The court further reasoned: "It may be noted that at the same session of the legislature at which the code rules were so radically changed, a constitutional amendment was submitted to the people of the state to add

---

[7] The former version of section 995 provided for an indictment to be set aside " 'when the defendant had not been held to answer before the finding of the indictment, on any ground which would have been good ground for challenge, either to the panel or to any individual grand juror.' " (*People v. Bright* (1910) 157 Cal. 663, 664 [109 P. 33].) Former section 896 provided that an individual grand juror could be challenged on the ground " 'that a state of mind exists on his part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to, the substantial rights of the party challenging.' " (*Bright*, at p. 664.)

section 4 1/2 to article VI of our fundamental law and which was ratified on October 10, 1911. The theory of the change in the law in that year would appear to have been that the return of an indictment should be the means of bringing a person accused of crime before the court for a trial of the issues more nearly as an alternative to the method of holding a defendant to answer after a preliminary examination and that irregularities attending the procedural steps should not void the proceeding provided the defendant was accorded a fair and impartial trial on the merits." (*Id.* at p. 448.) Subsequent cases are in accord. (*People v. Cohen* (1970) 12 Cal.App.3d 298, 329 [90 Cal.Rptr. 612]; *People v. Boehm* (1969) 270 Cal.App.2d 13, 23 [75 Cal.Rptr. 590] (*Boehm*); *People v. Shepherd* (1962) 200 Cal.App.2d 306, 314 [19 Cal.Rptr. 234], disapproved on another point in *People v. Jackson* (1963) 59 Cal.2d 468, 470 [30 Cal.Rptr. 329, 381 P.2d 1].)

■ *Kempley* follows the general rule that in the absence of a statutory provision to the contrary, an indictment is not subject to dismissal on the ground that individual grand jurors harbored bias or prejudice against the defendant. Many states continue to adhere to this rule,[8] the rationale for which lies primarily in the fact that "[a] grand jury operates as part of the charging process of criminal procedure, and its function is viewed as investigatory, not adjudicatory, in nature." (*Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 489–490 [57 Cal.Rptr.3d 170], citing *People v. Brown* (1999) 75 Cal.App.4th 916, 931–932 [89 Cal.Rptr.2d 589] and *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026 [13 Cal.Rptr.2d 551, 839 P.2d 1059]; see also *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1469 [128 Cal.Rptr.3d 120], italics added [noting grand jury's role "to *investigate* allegations of crime . . . to determine whether, after an *investigation*, an indictment should be filed against a person"].)[9] "Challenges for bias, or for

---

[8] (See, e.g., *Partin v. Commonwealth* (Ky. 2005) 168 S.W.3d 23, 30; *Sallie v. State* (2003) 276 Ga. 506 [578 S.E.2d 444, 453]; *Walker v. State* (Ind. 1993) 621 N.E.2d 627, 630; *State v. Laskay* (Ct.App. 1986) 103 N.M. 799 [715 P.2d 72, 73]; *State v. Oxendine* (1981) 303 N.C. 235 [278 S.E.2d 200, 206], superseded by statute on other grounds as stated in *State v. Covington* (1986) 315 N.C. 352 [338 S.E.2d 310, 314]; *People v. Edmond* (1978) 86 Mich.App. 374 [273 N.W.2d 85, 92]; *State v. Olson* (1958) 249 Iowa 536 [86 N.W.2d 214, 221]; see also generally Beale et al., Grand Jury Law and Practice (2d ed. 2010) § 3:21.)

[9] Packer argues that the grand jury in California is an adjudicatory body because the prosecutor has a duty to present the jury with any exculpatory evidence. (§ 939.71, subd. (a); *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 254–255 [124 Cal.Rptr. 32, 539 P.2d 792].) Although he quotes dicta from a United States Supreme Court case interpreting federal law that appears to support his position (*United States v. Williams* (1992) 504 U.S. 36, 51 [118 L.Ed.2d 352, 112 S.Ct. 1735]), our Supreme Court subsequently reiterated that under California law "the grand jury serves as part of *the charging process* of criminal procedure, not *the adjudicative process* that is the province of the courts or trial jury." (*Cummiskey v. Superior Court, supra,* 3 Cal.4th at p. 1026.) Moreover, "[w]e are unpersuaded that certain protections which California has chosen to build into its grand jury proceedings—namely prohibiting the use of evidence which would not be admissible at a trial (§ 939.6, subd. (b)), requiring the

any cause other than lack of legal qualifications, are unknown as concerns grand jurors. . . . [¶] The basic theory of the functions of a grand jury, does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be 'impartial.' No such requirement in respect to grand juries is found in the Fifth Amendment . . . . A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason." (*U.S. v. Knowles* (D.D.C. 1957) 147 F.Supp. 19, 20–21, fn. omitted; see also *Partin v. Commonwealth, supra,* 168 S.W.3d at p. 30 [quoting same].)[10] Pursuant to this rule, courts have upheld indictments notwithstanding the fact that the grand jury included political opponents of the defendant (*Boehm, supra,* 270 Cal.App.2d at p. 23); friends and close relatives of the victim (*State v. Vance* (2000) 207 W.Va. 640 [535 S.E.2d 484, 488–489]); potential witnesses for the prosecution (*State v. Oxendine, supra,* 278 S.E.2d at p. 206); the district attorney's secretary (*State v. Corley* (La.Ct.App. 1993) 617 So.2d 1292, 1298–1299, reversed on other grounds (La. 1994) 633 So.2d 151); and even the prosecutor (*Hopkins v. State* (1974) 24 Md.App. 53 [329 A.2d 738, 745], citing *U.S. v. Williams* (C.C.D.Minn. 1871) 28 F.Cas. 666 [F.Cas.No. 16716] (No. 16,716)).

## IV.

### *Due Process; No Actual Bias*

Packer urges us to abandon the rule regarding grand juror bias as stated in *Kempley* because intervening authority indicates he may have a right to an unbiased grand jury under the due process clauses of the state and federal Constitutions.

---

prosecutor to present evidence exculpatory of defendant (§ 939.71), and allowing indictments or charges in them to be set aside for insufficient evidence (§ 995)—have transformed the grand jury proceeding from one that is investigatory to one that is adjudicatory. Reliable evidence helps ensure an accurate investigation. Exoneration of unfounded or baseless charges is the only fair outcome when the investigation leads to that result. [Citation.] In short, the[se] protections . . . affect the manner in which a California indictment grand jury operates, but they do not change the investigatory nature of its proceedings." (*People v. Brown, supra,* 75 Cal.App.4th at pp. 931–932.)

[10] California law expressly provides that individual members of the grand jury may initiate an investigation leading to an indictment where they know or have reason to believe that a crime has been committed. (§ 918.)

 Federal law is unsettled on this point. In *Beck v. Washington* (1962) 369 U.S. 541 [8 L.Ed.2d 98, 82 S.Ct. 955], the United States Supreme Court stated, "It may be that the Due Process Clause of the Fourteenth Amendment requires the State, having once resorted to a grand jury procedure, to furnish an unbiased grand jury. [Citations.]" (*Id.* at p. 546.) The court expressly refrained from answering the question because the defendant failed to sustain his claim that the grand jury that indicted him was biased as the result of adverse publicity in the news media. (*Id.* at pp. 545–546.) The court did cite a prior case in which it stated that "[t]he Fifth Amendment requires nothing more" than "[a]n indictment returned by a legally constituted and unbiased grand jury." (*Costello v. United States* (1956) 350 U.S. 359, 363 [100 L.Ed. 397, 76 S.Ct. 406]; see *Beck*, at p. 546.) The court had made that prior statement, however, in support of its conclusion that a federal indictment was not subject to dismissal on the ground that only hearsay evidence had been presented to the grand jury. (*Costello*, at p. 363.) There was no claim of grand juror bias before the court. Moreover, the case the court cited in support of the proposition that defendants may have a constitutional right to "[a]n indictment returned by a legally constituted and unbiased grand jury" was one in which the prosecutor had employed racial bias in selecting the grand jury. (*Id.* at p. 363 & fn. 7, citing *Pierre v. State of Louisiana* (1939) 306 U.S. 354 [83 L.Ed. 757, 59 S.Ct. 536].)

Although California law is similarly unresolved, our Supreme Court "has recognized that the manner in which the grand jury proceedings are conducted may result in a denial of a defendant's due process rights, requiring dismissal of the indictment. [Citation.]" (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 417 [128 Cal.Rptr.3d 611, 257 P.3d 41], fn. omitted (*Stark*).) The court has also stated that the determination whether a defendant's due process rights have been violated in this regard ultimately depends on whether the error at issue "substantially impaired the independence and impartiality of the grand jury." (*Ibid.*) The court has also spoken of the need to ensure that the grand jury acts "independently of the prosecutor or judge." (*People v. Backus* (1979) 23 Cal.3d 360, 392 [152 Cal.Rptr. 710, 590 P.2d 837] (*Backus*).)

 Principles of stare decisis require us to follow *Kempley* absent a clear indication that the case has been overruled, abrogated, or otherwise rendered obsolete. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456 [20 Cal.Rptr. 321, 369 P.2d 937].) Although our Supreme Court has more recently alluded to the right to an impartial grand jury, all of the cases in which the issue was addressed involved claims of prosecutorial impropriety. (*Stark, supra*, 52 Cal.4th at p. 417 [prosecutor had conflict of interest]; *Backus, supra*, 23 Cal.3d at p. 393 [prosecutor presented grand jury with incompetent and irrelevant evidence]; *Johnson v. Superior Court, supra*, 15 Cal.3d at pp. 253–255 [prosecutor violated duty to present exculpatory

evidence].) In this regard, it could be said that the court's statements regarding the need to ensure grand jury impartiality and independence are merely intended to give force to "[t]he grand jury's 'historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor.' " (*Johnson*, at pp. 253–254, quoting *United States v. Dionisio* (1973) 410 U.S. 1, 17 [35 L.Ed.2d 67, 93 S.Ct. 764]; see also *Backus*, at p. 392 [" '[A]ny prosecutorial manipulation which substantially impairs the grand jury's ability to reject charges which it may believe unfounded is an invasion of the defendant's constitutional right. . . . When the prosecutor manipulates the array of evidence to the point of depriving the grand jury of independence and impartiality, the courts should not hesitate to vindicate the demands of due process.' "].) Nothing in the record before us suggests that the prosecutor manipulated the proceedings or otherwise acted in a manner that had any purpose or tendency to undermine Juror No. 2's ability or desire to act impartially. On the contrary, the prosecutor extensively questioned the juror to ensure that she did not possess information or have a mindset that would render her biased against Packer. It is also clear from the prosecutor's comments that he understood the importance of making an adequate record.

Moreover, there is hardly a national consensus on the issue whether due process demands that grand jurors be free of the sort of bias alleged here. In our view, compelling and persuasive arguments have been made in support of both positions. (Compare, e.g., *Hopkins v. State, supra*, 329 A.2d at p. 747 [rejecting claim that an unbiased grand jury is compelled by the due process clause of the U.S. Const.][11] with *State v. Murphy* (1988) 110 N.J. 20 [538 A.2d 1235, 1239] [recognizing due process right to an unbiased grand jury].[12])

---

[11] "We note that permitted attacks on the composition of grand juries, because of alleged prejudice or bias on the part of a grand juror or grand jurymen, would wreak havoc with the orderly administration of criminal justice, impede speedy trials and generally create a chaotic condition. Each person who had been indicted might, in an effort to have that indictment dismissed, seek to challenge the membership of the grand jury upon the hopeful ground that at least one of the grand jurors had some bias toward the accused as the result of ingrained prejudice, adverse publicity, a relationship to the victim or a witness or some other type of kindred connection with the State's charges. Needless to say, such a procedure could result in each member of the grand jury's possibly being subjected to a *voir dire* 'fishing expedition' by each and every accused indicted by that grand jury. In our view the Due Process Clauses of the Constitution of the United States do not require us to substitute a chaotic condition for the orderly administration of criminal justice. Moreover, as we see it, so long as the accused is indicted by a grand jury that is chosen without systematic exclusion of any race or creed, and the accused is afforded a right to a petit jury that he may subject to *voir dire* in order to eliminate the possibility of prejudice, the constitutional protection of due process is met." (*Hopkins v. State, supra*, 329 A.2d at p. 747.)

[12] "[T]here is indeed respectable authority for the proposition 'that a grand juror's prior opinion as to the guilt of the accused or his interest in the prosecution does not serve to disqualify him from service.' [Citations.] We suspect that this principle is rooted more in history than in justice. Its theory is that 'since grand jurors live in the vicinity of the place

■ Ultimately, we need not decide whether Packer had a due process right to an unbiased grand jury because he fails to demonstrate that Juror No. 2 was actually biased. (See *People v. Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000] ["[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us."]; *In re Michael G.* (1988) 44 Cal.3d 283, 295 [243 Cal.Rptr. 224, 747 P.2d 1152] [quoting same].) ■ Even those courts that have recognized a defendant's due process right to challenge an indictment on the ground of grand juror bias have concluded that the defendant "bears a heavy burden of showing actual bias and prejudice." (*U.S. v. Finley* (N.D.Ill. 1988) 705 F.Supp. 1297, 1307, and cases cited therein.) Bias cannot be presumed. (*Beck v. Washington, supra,* 369 U.S. at p. 558 [" 'While this Court stands ready to correct violations of constitutional rights, it also holds that "it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." ' "].)

The trial court found that Packer had failed to make a showing of actual bias. Having reviewed the record, we reach the same conclusion.[13] Members of the "prosecution team" are most often identified for the purpose of establishing the prosecution's discovery obligations. (*In re Steele* (2004) 32 Cal.4th 682, 697 [10 Cal.Rptr.3d 536, 85 P.3d 444]; cf., e.g., *People v. Jacinto* (2010) 49 Cal.4th 263, 270 [109 Cal.Rptr.3d 610, 231 P.3d 341] [defendant failed to establish his rights to compulsory process were violated where sheriff who released a defense witness with knowledge he was likely to be deported was not "part of the prosecution team"].) Whether Juror No. 2 can be characterized as a "member of the prosecution team" in this regard—or for any other purpose for which that designation has previously been utilized—is not particularly meaningful within the context of this case. Juror No. 2 is a clerical employee who does not participate in the Task Force's investigation of criminal matters. Although she recalled placing in the evidence room a

---

where the crime was committed, it may be assumed in many instances that they know better than others the character of the parties and of the witnesses.' [Citation.] That supposition, like its counterpart in the petit jury context, has lost its meaning in contemporary society, where citizens hardly know the neighbors beyond their block, much less all the affairs of the community. Now we seek to impanel juries that do not know the facts of a case. [Citation.] [¶] We believe that the guarantee of an indictment by grand jury, enshrined in our State and federal constitutions, now means more than indictment by a body that may have prejudged the case." (*State v. Murphy, supra,* 538 A.2d at p. 1239.)

[13] It is undisputed that the court's finding regarding Packer's claim of grand juror bias presents a mixed question of law and fact subject to our de novo review. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385 [112 Cal.Rptr.3d 853, 235 P.3d 152].)

computer that had been submitted for analysis, she did not participate in that analysis and had no knowledge of the computer's contents.[14]

■ Moreover, the items submitted to the Task Force for analysis did not contain any relevant information and played no part in the proceedings held before the grand jury. The mere fact that Juror No. 2 works for a law enforcement agency did not categorically preclude her from serving as a grand juror in criminal matters. (See *People v. DePriest* (2007) 42 Cal.4th 1, 22–23 [63 Cal.Rptr.3d 896, 163 P.3d 896] [in death penalty case, former district attorney investigator and customs agent were not disqualified from serving on petit jury or subject to a challenge for cause solely by reason of their employment].) Nor is it determinative that Juror No. 2 may have learned about the case through her employment, or even that her knowledge of the case may have led her to harbor an opinion on the matter. "It is not required . . . that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (*Irvin v. Dowd* (1961) 366 U.S. 717, 722–723 [6 L.Ed.2d 751, 81 S.Ct. 1639].)

■ Juror No. 2 unequivocally declared that her employment at the Task Force would not prevent her from rendering an unbiased decision in the matter. This assessment of her impartiality, be it viewed subjectively or objectively, finds ample support in the record. Although Packer asserts that she had a conflict of interest by virtue of the fact that her supervisor is a

---

[14] In his verified reply, Packer asserts as fact that Juror No. 2 "misrecollected, misrepresented, and minimized the true number of electronic 'high-tech' physical items of evidence that were seized in this case *and given to her* to be analyzed by her task force." (Italics added.) The evidence he cites for support does not establish this. Juror No. 2 stated that to her knowledge, the computer she placed in the evidence room was the only item the Task Force had received on the case. In their return, the People acknowledge that the Task Force had actually received and analyzed a total of 12 physical items as well as information to access a Facebook account. Nothing in this acknowledgment suggests that any of the additional items were received by Juror No. 2, or that she even had reason to be aware of their existence.

district attorney investigator, there is nothing to suggest that she would have had any reason to consider herself beholden to the prosecution's position or fear repercussions from her employer if she did not vote to indict. One of the hallmarks of the grand jury is that its deliberations are shrouded in secrecy. (§§ 911, 915; *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293, 1304 [129 Cal.Rptr.3d 241].) Each juror's vote is confidential and is not subject to disclosure under any circumstances. (§ 924.2.) Indeed, any willful disclosure of the manner in which a grand juror has voted is punishable as a misdemeanor. (§ 924.1.) There is simply no evidence in the record that would allow us to disregard the presumption that Juror No. 2's declaration of her ability to act independently and impartially was both credible and true. (*People v. Fields* (1983) 35 Cal.3d 329, 384 [197 Cal.Rptr. 803, 673 P.2d 680].) Because the juror had an official duty to act without bias and did not retire after the foreperson admonished her to that effect in accordance with section 939.5, we must also presume that her official duty in this regard was in fact performed. (Evid. Code, § 664; *Boehm, supra,* 270 Cal.App.2d at p. 23.)[15] Even if Packer could establish that Juror No. 2 was biased, it is difficult to conceive how the remaining 16 jurors could have declined to indict him when presented with such powerful evidence of his guilt.[16]

██ Packer also asserts that the prosecutor "may have violated the separation of powers" by deciding that Juror No. 2 was unbiased instead of allowing the court to do so. Although we need not address this claim because it was not raised below, we reject the People's suggestion that the prosecution was effectively precluded from bringing the matter to the court's attention, or that the court lacked any authority to act. Regardless of whether grand juror bias constitutes a due process violation or otherwise provides a basis for overturning an indictment, California law expressly contemplates that grand

---

[15] In a letter brief filed shortly before oral argument, Packer offers an opinion from Hawaii in support of his claim that Juror No. 2's employment effectively barred her from serving on the grand jury that indicted him. (*State v. Pacific Concrete & Rock Co., Ltd.* (1977) 57 Haw. 574 [560 P.2d 1309].) The grand juror at issue in that case was a law clerk employed in the office of the prosecuting attorney who not only assisted the deputy prosecutor in presenting the state's case against the defendants before the grand jury, but was also officially appointed and sworn by the grand jury to serve as its special agent. (*Id.,* 560 P.2d at p. 1310.) The court found "no difficulty" in concluding that the juror's "dual role, as a representative of both the prosecution and of the grand jury, was inconsistent with the constitutional right of the defendants to have the charges against them heard fairly and impartially by a grand jury free of external influences." (*Ibid.*) This bears no resemblance to the role held by Juror No. 2, a clerical employee who played no part in the investigation or presentation of the case before the grand jury.

[16] Twelve votes were necessary to return the indictment against Packer. The record reflects that a total of 17 grand jurors heard the evidence, and that "at least 12" of them voted to indict.

jurors who are actually biased will retire from service. (§ 939.5.) Moreover, a biased juror who fails to comply with the foreperson's admonition in this regard is subject to punishment by contempt. (*Ibid.*) The court has the power to decide whether a particular grand juror is biased and also to decide whether to hold a biased juror in contempt. Given the unsettled state of the law, a prudent prosecutor would seek the court's intervention where bias is apparent or at least questionable. Here, however, the prosecutor's voir dire revealed no basis for believing that Juror No. 2 could not be impartial.[17]

## CONCLUSION

In reaching our conclusion, we are mindful of the possibility that there may be another case in which a grand juror is so closely aligned with the prosecution by reason of her employment that it cannot be said she acted impartially and independently of the prosecution in voting to indict. This, however, is not such a case. Juror No. 2 stated that her "secretarial job" with the sheriff's department would have no effect on her ability to independently and impartially evaluate whether Packer should be indicted based solely on the evidence presented to the grand jury. Nothing about the nature of her employment, the performance of her duties incident thereto, or any other

---

[17] California Attorneys for Criminal Justice (CACJ), appearing as amicus curiae on behalf of Packer, urges us to conclude that the trial court's voir dire of potential grand jurors prior to their impanelment must also include inquiries sufficient to ensure they are not biased because the statutory qualifications for service provide that all grand jurors must be "of fair character." (§ 893, subd. (a)(2).) According to CACJ, "in terms of grand jury-related vocabulary, 'unfair character' " means "bias." We are not persuaded. The requirement of "fair character" simply means that grand jurors must possess a reputation for honesty and integrity. (See *People v. Cohen, supra*, 12 Cal.App.3d at p. 309 [interpreting former § 897].) "Bias" in this context refers to "a state of mind in reference to the case or to either party which will prevent [the juror] from acting impartially and without prejudice to the substantial rights of the party." (§ 939.5.) There is no suggestion that Juror No. 2 bore a state of mind that prevented her from acting impartially on *all* criminal matters, such that she should have been disqualified from serving on any grand jury. On the contrary, Packer expressly declines to challenge her impanelment on that ground.

In any event, the procedure CACJ advocates is impractical and ultimately unworkable. As one treatise explains: "Challenges for bias or prejudice in particular cases are difficult to accommodate given the structure of the grand jury. Trial jurors are selected for a single case after voir dire in which the defense participates, exercising both peremptory challenges and challenges for cause. A grand jury, in contrast, ordinarily hears a number of cases during its term. At the time a grand jury is impaneled, no one can say what cases will arise during its term, or who the defendants and witnesses will be. It is simply not possible to remove from the grand jury all persons who might have extrajudicial knowledge of some of the cases or parties that will eventually come before the grand jury." (Beale et al., Grand Jury Law and Practice, *supra*, § 3:21, fn. omitted.) That is precisely the situation here.

evidence in the record demonstrates that she was either unwilling or incapable of acting fairly and without prejudice to Packer's due process rights. There is simply no basis for us to reject the presumption that Juror No. 2's declaration of impartiality was sincere, true, and correct.

The petition for a writ of prohibition is denied.

Gilbert, P. J., and Coffee, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 14, 2012, S199247.