Filed 8/20/19; on transfer

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DARREN WILLIAMS,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN JOAQUIN COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | C083126<br><br>(Super. Ct. No. STKCRFE20160006123) |

ORIGINAL PROCEEDING in mandate.  Petition granted.  Stephen G. Demetras, Judge.

Miriam T. Lyell, Public Defender, Robert G. Remlinger, Nelson C. Lu, Sarah L. White, and Jonathan W. Fattarsi, Deputy Public Defenders for Petitioner.

No appearance for Respondent.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Paul E. O'Connor, and Darren K. Indermill, Deputy Attorneys General for Real Party in Interest.

1

On October 5, 2016, petitioner Darren Williams sought extraordinary writ relief in this court from the superior court's order denying his Penal Code section 995 motion to dismiss an indictment issued by a grand jury charging him with a series of cell phone store robberies.[1] Petitioner moved to dismiss the indictment on the basis that the deputy district attorney's excusal of a juror for hardship violated the grand jury's independence and rendered it improperly constituted. Petitioner also challenged the sufficiency of the evidence with respect to the gang allegations and counts regarding a March 10, 2014, robbery. In a published opinion, we concluded the superior court should have granted the motion to dismiss the indictment because the deputy district attorney's exercise of authority he did not have over the grand jury, in front of the grand jurors, substantially impaired the independence and impartiality of the grand jury. As such, we did not reach the sufficiency of the evidence claims. We issued a peremptory writ of mandate vacating the superior court's order denying petitioner's motion to dismiss the indictment and directing the court to enter a new order granting the motion.

The Supreme Court granted review and deferred the matter pending consideration and disposition of a related issue in *Avitia v. Superior Court*, S242030, or pending further order of the court.

In December 2018, our Supreme Court issued *Avitia v. Superior Court* (2018) 6 Cal.5th 486 (*Avitia*), a case that discussed whether an indictment must be set aside because of a prosecutor's dismissal of a juror during grand jury proceedings. The court held that "a defendant may seek dismissal of an indictment on the ground that the prosecutor violated section 939.5 by filing a pretrial motion under section 995, subdivision (a)(1)(A). In order to prevail on such a motion, the defendant must show that

---

[1] Undesignated statutory references are to the Penal Code.

the error reasonably might have had an adverse effect on the impartiality or independence of the grand jury." (*Id.* at pp. 488-489.)

On April 24, 2019, the California Supreme Court transferred the matter back to this court, with directions to vacate our decision and reconsider the cause in light of *Avitia*. We vacated our opinion on April 26, 2019. The parties have filed supplemental briefs.

After consideration of *Avitia*, we will again issue a peremptory writ of mandate vacating the superior court's order denying petitioner's motion to dismiss the indictment and directing the court to enter a new order granting the motion.

## I. BACKGROUND

### A. *Grand Jury Proceedings*

On August 6, 2015, the San Joaquin County District Attorney's Office filed a complaint charging petitioner and codefendants Jordan Ferguson and William Mayfield with multiple counts of robbery and other charges. The People filed an amended complaint on April 15, 2016, that included 26 charges and additional factual allegations. Petitioner in particular was charged with 15 counts of robbery, two counts of attempted robbery, one count of conspiracy to commit a crime, one count of kidnapping to commit robbery, and one count of possession of an assault weapon.

The transcript of the grand jury proceedings provided by petitioner begins on April 25, 2016, with the deputy district attorney introducing himself to the jurors. Next, the deputy district attorney excused Juror No. 15 from service: "Before I get any further, I have been informed that one of our potential jurors who was designated as Juror Number 15 learned over the break that she will not get paid for the full five days and that she has informed us that that will cause her an economic hardship as stated in the statute. [¶] *So I'm going to release her from her service at this time*. [¶] And that was—and just for the record, Juror Number 15; is that correct?

"THE JURORS: Yes.

3

"[Deputy District Attorney]:  Thank you.  [¶]  You can leave your materials there and I will pick them up again."  (Italics added.)

The proceedings continued with 18 jurors, and witness testimony began the following day.  At the beginning of the second day of testimony, the deputy district attorney made the following record:

"Grand Juror Number 10 approached me yesterday at the conclusion of testimony for the day and let me know that one of the witnesses she recognized.  She did not recognize that person when we read the witness list.  They're not a close relationship of any real kind, and she assured me that that relationship wouldn't affect her ability to be impartial and impartially judge the facts of this case and deliberate.

"Is that correct?

"JUROR NO. 10:  Yes.

"[Deputy District Attorney]:  Thank you."

After that, testimony continued.  The last witness testified and jury instructions were read on April 29, 2016.  The prosecutor finished reading the jury instructions sometime after 1:30 p.m. and then gave a closing argument.  The grand jury deliberated and returned a 68-page indictment later that same day.  At least 12 of the grand jurors concurred in the finding of the indictment.  With respect to petitioner, the indictment included all the offenses and allegations that appeared in the amended complaint.

B.      *Motion to Dismiss the Indictment*

On July 15, 2016, petitioner filed a motion to dismiss the indictment against him under section 995.  He argued that, by dismissing a previously qualified grand juror for hardship, the prosecutor exceeded his authority, "usurped a judicial branch function," and "invaded the independent role of the grand jury."  This, he argues, left an improperly constituted jury of less than the required 19 grand jurors and rendered the indictment fatally defective.  Petitioner argued these allegations were "compounded by other actions of the Deputy District Attorney" but did not specify any.  Additionally, petitioner raised

4

challenges to the sufficiency of the evidence with regard to the gang allegations and his involvement in the March 10, 2014, robbery.

The People's opposition attached as an exhibit a ruling by the Honorable Brett H. Morgan denying a motion to dismiss an indictment in an unrelated grand jury proceeding in which a different San Joaquin County deputy district attorney exceeded his authority by excusing a biased juror outside the presence of the other jurors.[2]  As discussed below, this action violated sections 910 and 939.5.

Borrowing from this earlier ruling, the court denied petitioner's motion.  With respect to the excusal of Juror No. 15, the court explained, "[E]verybody agrees [the deputy district attorney] kicked off a juror improperly, although, [the juror] probably would have been excused by a judicial officer in some fashion.  But it's not clear what the remedy is here.  Judge Morgan felt, I think, his cases that he cites are correct, that there is no automatic prejudice by having 18 versus 19 when you have the declaration that 12 or more returned the indictment.  That's what you are entitled to.  So what's the best that could have happened here?  This 19th juror could have voted against a voting order or the indictment.  Still would have had 12 or more.

"So with that state, I don't think there is any automatic prejudice, and I don't see that the defendant has shown any actual prejudice here.  Twelve or more grand jurors voted for the indictment and that's all that's required.

"So while there was a technical violation of that statute, I don't think it rises to a due process violation and its displayed prejudice here on behalf of any of the defendants.  So I would overrule the 995 on those grounds."

Petitioner sought review in this court by filing a petition for writ of mandate or prohibition.  We requested that the People file an opposition, and they did.

---

[2]  This was the proceeding that would give rise to *Avitia*.

On December 1, 2016, we issued an order to show cause why the relief prayed for in this proceeding should not be granted and issued a stay of all further proceedings, including the trial. The People subsequently indicated their earlier opposition to the petition may be deemed their return.

## II. DISCUSSION

### A. *The Grand Jury Process*

In the prosecution of a felony, the People may proceed either by indictment or information. (Cal. Const., art. I, § 14; §§ 682, 737.) "An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." (§ 889.) "Thus, under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026.) "Prior to the authorization of informations, the chief function of the grand jury was to hear evidence of felonies and to bring indictments." (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Criminal Procedure, § 33, p. 58.) While this is no longer so (*ibid*.), in determining whether probable cause exists to accuse a defendant of a particular crime, "[t]he grand jury's 'historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor' [citation] is as well-established in California as it is in the federal system." (*Johnson v. Superior Court of San Joaquin County* (1975) 15 Cal.3d 248, 253-254.) A grand jury is " ' "a constitutional fixture in its own right." ' [Citations.] In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. [Citations.] Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length." (*United States v. Williams* (1992) 504 U.S. 36, 47 [118 L.Ed. 2d 352].)

6

The grand jury originates from the common law, but "the California Legislature has codified extensive rules defining it and governing its formation and proceedings, including provisions for implementing the long-established tradition of grand jury secrecy." (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1122.) For instance, "[d]eliberations of the grand jury are completely private; no person other than the grand jurors themselves may be present during 'the expression of the opinions of the grand jurors, or the giving of their votes' on any criminal matter before them. (§ 939.)" (*People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 415.) "A grand jury is a body of the required number of persons returned from the citizens of the county before a court of competent jurisdiction, and sworn to inquire of public offenses committed or triable within the county." (§ 888.) At least one grand jury is impaneled in each county every year.[3] (§ 905; *Cummiskey v. Superior Court, supra*, 3 Cal.4th at p. 1024.) It is undisputed that the "required number" of jurors in San Joaquin County is 19. (§ 888.2, subd. (c).) Of these, at least 12 must concur in an indictment. (§ 940.) "When so found it shall be endorsed, 'A true bill.' " (*Ibid*.)

"The qualifications for service as a grand juror in California are prescribed by statute and relate to matters such as citizenship, age, mental competency, intelligence, and character. [Citation.] The trial court determines these qualifications by personal interview and examination." (*Packer v. Superior Court* (2011) 201 Cal.App.4th 152, 163, fn. omitted (*Packer*).) Of particular relevance to this petition, "When a person is drawn and found qualified he shall be accepted unless the court, on the application of the juror and before he is sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of

---

[3] It appears this case involves the impanelment of an "additional grand jury" under section 904.6 specifically impaneled to hear criminal matters.

7

the Code of Civil Procedure." (§ 909.) Included in this chapter is an excusal for "undue hardship." (Code Civ. Proc, § 204, subd. (b).) "No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when made by the court for want of qualification, as prescribed in Section 909." (§ 910.)

"After selection, section 939.5 authorizes 'the foreman of the grand jury' to 'direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire.' Section 935 authorizes the prosecutor to 'giv[e] information or advice relative to any matter cognizable by the grand jury.' But no provision authorizes a prosecutor to dismiss a grand juror . . . ." (*Avitia, supra*, 6 Cal.5th at p. 492.)

The Penal Code also provides a mechanism, not utilized here, by which vacancies on the grand jury may be filled by the jury commissioner in the presence of the court. (§ 908.1.)

B.      *Grand Juror No. 10*

In this original proceeding, petitioner claims broadly that the deputy district attorney violated the grand jury's independence and rendered it improperly constituted by *choosing* who to excuse. Specifically, petitioner's expanded claim now encompasses the assertion that the deputy district attorney "elected not to remove Grand Juror [No.] 10." The People argue this issue was forfeited because petitioner did not raise it earlier. They rely on *Packer*, in which the defendant argued his indictment should have been dismissed because of grand juror bias (*Packer, supra*, 201 Cal.App.4th at pp. 156-157) and also, for the first time in the court of appeal, "that the prosecutor 'may have violated the separation of powers' by deciding that Juror No. 2 was unbiased instead of allowing the court to do so" (*id.* at p. 171). The appellate court held that it did not need to address the separation of powers claim because it was not raised in the superior court. (*Ibid.*) Petitioner argues that here the issue regarding Juror No. 10 was not forfeited because it was part of his

8

claim in his motion to dismiss, and also because it is a constitutional claim. On the question of forfeiture, the People have the better argument. *Packer* also involved a constitutional claim, and here the petitioner's claim in the superior court was limited to the *excusal* of Juror No. 15. Even if we were to reach this issue, the allegations regarding Juror No. 10 do not add meaningfully to petitioner's writ petition. While the deputy district attorney discussed the possible bias of Juror No. 10, he did not dismiss her. While we are troubled by the implication he had authority over this issue, his actions did not technically go beyond making a record of the facts relevant to whether the foreman had a duty to direct Juror No. 10 to retire. (§ 939.5.) We will therefore decide this petition based solely on the deputy district attorney's erroneous excusal of Juror No. 15.

C.      *Prosecutor's Excusal of Juror No. 15*

We now address petitioner's claim that the deputy district attorney's excusal of Juror No. 15 violated the grand jury's independence.[4]

Section 995, subdivision (a)(1) sets forth two categories of error that can provide a basis for granting a motion to set aside an indictment:

"(A) Where it is not found, endorsed, and presented as prescribed in [the Penal] code.

"(B) That the defendant has been indicted without reasonable or probable cause."

In *Avitia*, our Supreme Court held that "a defendant can proceed by a section 995[, subdivision ](a)(1)(A) motion to set aside an indictment on the ground that a section 939.5 violation substantially impaired the impartiality and independence of the grand jury." (*Avitia, supra,* 6 Cal.5th at p. 495.) We conclude this is also true of a similar

---

[4] In light of the recent guidance from our Supreme Court and our conclusions in this opinion, we need not address petitioner's claim that the excusal of Juror No. 15 also rendered the grand jury improperly constituted.

claim based on a prosecutor's improper excusal of a juror for hardship. As relevant to this appeal, the court explained that "a defendant seeking to set aside an indictment before trial must show that an error 'reasonably might have affected the outcome.' [Citation.] This showing is less onerous than the 'reasonably probable' showing required to prevail on a similar motion after trial, when interests in finality are greater." (*Id*. at p. 497.) It also held when a defendant seeks to set aside an indictment before trial on the ground that the prosecutor violated section 939.5, "the indictment must be set aside only when the defendant has shown that the violation reasonably might have had an adverse effect on the independence or impartiality of the grand jury." (*Avitia, supra,* at p. 498.) This is the standard we now apply to the prosecutor's improper excusal of Juror No. 15.

Petitioner argues the prosecutor's interference with the grand jury's independence requires dismissal. In *Avitia*, the court held the petitioner did not show that the prosecutor's improper dismissal of a juror outside the presence of the other grand jurors after he had expressed concern about his own bias reasonably might have affected the impartiality or independence of the grand jury in an adverse manner. (*Id*. at pp. 498-499.) The court referred to our vacated opinion in this case to explain, "The facts [in *Avitia*] are different from cases where the prosecutor was actively involved in the selection of grand jurors or excused a grand juror in the presence of other grand jurors. In those cases, the prosecutor's actions could have led grand jurors to believe they were beholden to the prosecutor during the decision[-]making process." (*Id*. at p. 498.)

Here, as *Avitia* noted, the prosecutor's actions could have led grand jurors to believe they were beholden to the prosecutor during the decision-making process. In our previous opinion, we stated that by deciding that Juror No. 15 should be excused for hardship, the deputy district attorney used authority of the judicial branch. In their supplemental brief, the People challenge this conclusion. The People note that the Court has authority to rule on a hardship request before the grand jury is sworn, and no statute addresses hardship requests made after the grand jurors are sworn. After the grand jury is

10

sworn and charged, it retires to a private room and the court is not present during the grand jury's sessions unless the grand jury requests its advice as provided by section 934. (§ 915.) The People conclude from this statutory scheme that it is not error for the prosecutor to respond to hardship requests if a grand juror asks for assistance.

As our Supreme Court explained in *Avitia*, "mere influence over the composition of the grand jury is not impermissible; section 935 provides that the prosecutor may 'giv[e] information or advice relative to any matter cognizable by the grand jury.' " (*Avitia, supra,* 6 Cal.5th at p. 498.) However, "no provision authorizes a prosecutor to dismiss a grand juror." (*Id.* at p. 492.) Here, the prosecutor did more than give information or advice. He *ruled* on a hardship request in a way that the grand jury would have only previously seen the court do: "I'm going to release her from her service at this time." In *Avitia*, the prosecutor dismissed a grand juror outside the presence of other jurors. (*Id.* at p. 498.) This "reduced the likelihood that the independence of the remaining grand jury was impaired." (*Id.* at p. 499.) Here, unlike *Avitia*, the prosecutorial overreach occurred in the presence of the grand jurors and allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request. The prosecutor asserted direct control over the composition of the grand jury. Another difference between this case and *Avitia* is that the juror who was removed in that case had stated unequivocally he would not be able to fairly review the case, and his dismissal helped ensure the grand jury's impartiality. (*Id.* at p. 498.) It is unclear from the limited record before us whether Juror No. 15 should have been excused for "undue hardship," assuming that was a permissible result at this stage in the proceedings. (See Code Civ. Proc., § 204, subd. (b).) The fact the excused juror was not replaced suggests the court was not made aware of what happened, effectively preventing the drawing of another grand juror who might have impacted deliberations.

If this case involved a petit jury instead of a grand jury, we are confident these same facts would produce justifiable outrage by the court and opposing counsel. But

11

here, the possibility of an objection was structurally foreclosed: The court was not present and grand jury proceedings necessarily exclude defense counsel. In denying petitioner's motion to dismiss the indictment, the superior court focused its analysis on the missing 19th juror, but our concern is with the impact the deputy district attorney's actions had on the grand jurors that remained. "[I]rregularities at grand jury proceedings should be closely scrutinized because protection of the defendant's rights is entirely under the control of the prosecution without participation by the defense." (*Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 495-496.) The deputy district attorney's improper display of authority over the grand jury went to the very structure the Legislature has provided to keep these constitutional fixtures necessarily independent. (Cf. *De Leon v. Hartley* (N.M. 2013) 2014-NMSC 005 [316 P.3d 896, 899] [holding that permitting district attorney to take over the court's role of deciding who shall serve as grand jurors "is to sacrifice any perception that the grand jury is an entity distinct from the prosecutor that is capable of serving as a barrier against unwarranted accusations"].) We must, therefore, conclude that the deputy district attorney's improper excusal of Juror No. 15 and corresponding reduction of the required number of jurors reasonably might have had an adverse effect on the impartiality or independence of the jury. The prosecutor's actions could have led grand jurors to believe they were beholden to the prosecutor generally and during the decision-making process. For these reasons, petitioner's motion to dismiss the indictment against him based on the improper excusal of Juror No. 15 should have been granted.

## III.  DISPOSITION

Let a peremptory writ of mandate issue vacating respondent court's order denying petitioner's motion to dismiss the indictment and directing the superior court to enter a new order granting the motion as to the charges and allegations against petitioner.  The writ shall issue without prejudice to the People continuing to prosecute these charges by seeking another indictment free of the charged defects or by filing another complaint. This court's stay order is vacated upon finality of this opinion.

/S/

---

RENNER, J.

We concur:

/S/

---

BUTZ, Acting P.J.

/S/

---

DUARTE, J.

13