Filed 10/18/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BRANDON ANDRES RUIZ-MARTINEZ,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CRUZ COUNTY,<br><br>        Respondent,<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | No. H044349<br>(Santa Cruz<br>Super. Ct. No. 16CR02326) |

A grand jury returned an indictment against Brandon Andres Ruiz-Martinez, charging him with, among other offenses, two counts of murder (counts 1 & 2) and alleging, among other special allegations, that each murder was committed for a criminal street gang, namely the "Norteno/Northside Watsonville Chicos." (See Pen. Code, § 190.2, subd. (a)(22).)[1] The indictment further charged him with street terrorism (count 3), assault with a deadly weapon and by means likely to produce great bodily injury (count 4), and conspiracy to commit murder (count 5), and it set forth multiple special allegations.

In the trial court, Ruiz-Martinez moved to dismiss the indictment pursuant to section 995. He argued that the indictment had to be dismissed for three reasons, including that the People improperly dismissed three grand jurors in violation of

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

section 939.5, the separation of powers doctrine, and Ruiz-Martinez's due process rights.[2] He asserted that the prosecutor's dismissal of grand jurors in violation of section 939.5 resulted in an indictment "not found, endorsed, and presented as prescribed in [the Penal Code]" (§ 995, subd. (a)(1)(A)) and that no showing of prejudice was required to obtain dismissal of the indictment because Ruiz-Martinez had been denied a substantial right. The trial court denied the motion.

Ruiz-Martinez (hereinafter petitioner) filed a petition for writ of mandate and/or prohibition in this court to obtain review of the trial court's denial of his section 995 motion. In support of the petition, he argued, as he had below, that (1) the unauthorized dismissal of three grand jurors resulted in an indictment "not found, endorsed, and presented as prescribed in [the Penal Code]" (§ 995, subd. (a)(1)(A)) and (2) no showing of prejudice was required to obtain dismissal of the indictment because he had been denied a substantial right. Petitioner further contended that in any case, dismissal of the indictment was necessary because (1) the improper dismissals of jurors created structural error in the grand jury proceedings and (2) the improper dismissal of a grand juror who was favorable to petitioner "reasonably might have affected the outcome of the proceeding" since "the juror's service (perhaps upon rehabilitation by the foreperson) would have undoubtedly affected the deliberations process and the ultimate vote for indictment." Lastly, it was asserted that the indictment was required to be dismissed because the prosecutor's violations of section 939.5 also infringed the separation of powers and violated petitioner's due process rights.

After this court summarily denied the petition, the California Supreme Court granted review (S241068). The Supreme Court decided *Avitia v. Superior Court* (2018)

---

[2] In support of the section 995 motion, it was further argued that the indictment had to be dismissed because (1) the People dissuaded the grand jury from considering exculpatory evidence and (2) the evidence was insufficient to support each count.

6 Cal.5th 486 (*Avitia*) and then transferred this matter back to this court with directions to vacate our decision and issue an order to show cause (OSC) in light of *Avitia*.

As directed, we vacated our order denying the petition and issued an OSC. The respondent superior court was ordered to show cause why petitioner was not entitled to relief in light of *Avitia*. The Attorney General filed a return to the OSC on behalf of the People, the real party in interest. Petitioner filed a reply to that return.

After thoroughly considering both *Avitia* and the record, we conclude that the record does not show that the prosecutor's improper actions during the grand jury proceedings reasonably might have adversely affected the grand jury's impartiality or independence or violated the separation of powers doctrine or petitioner's rights to due process. Accordingly, the petition is denied.

I

*The Prosecutor's Dismissal of Three Grand Jurors Before Indictment*

The record reflects that at the outset of the grand jury proceedings, there were 25 grand jurors. The assistant district attorney (prosecutor) told the grand jurors: "[T]he job of the grand jury is to be a neutral fact finder. Your role is to issue an indictment if probable cause has been found." The prosecutor told the jurors that they could rely on only admissible evidence and that it was her job to make sure the evidence presented was admissible and to make them aware of any exculpatory evidence. She informed the jurors that they could subpoena more witnesses or evidence that they wished to hear. The prosecutor told the jury that there would be 19 jurors deliberating, and an indictment required 12 votes.

The prosecutor described the evidence that the grand jury could expect to hear. She indicated that in 2014 a double murder had occurred "in the parking lot area of the Fish House restaurant and the Valley Inn [m]otel in Watsonville" and that "almost all of it was caught on surveillance video." She told the grand jurors that they would hear about eight individuals who were "all northern affiliated gang members," seven of whom

3

belonged to "a very specific subset gang in Watsonville known as North Side [*sic*] Watsonville Chicos."

The prosecutor also told the jurors: "[T]he things that I say are not evidence. So the evidence is the sworn testimony of the witnesses. I'm giving you an overview, but you are not to consider what I say about this case as evidence in this case."

In accordance with section 939.5, the grand jury foreman then told the jury: "Any member of the grand jury who has a state of mind in reference to the case or to the persons involved which will prevent him or her from acting impartially and without prejudice to the substantial rights of the persons involved shall retire from this hearing." The foreman also admonished: "During the pendency of this hearing . . . and until the grand jury has . . . completely finished with this case, you are instructed that no media accounts concerning this matter and no other sources of information other than that which is presented to you within this hearing room when the jury is in session can be used by you against any potential defendants in reaching a decision in this matter." The foreman asked, "Is there anyone who feels unable to disregard any information they may have heard or read?"

One grand juror immediately spoke up. The grand juror indicated that he or she had family members involved in the case on the side of the Northside gang. The juror did not think he or she could be fair. The prosecutor excused the grand juror.

Another grand juror then expressed concern that he or she already felt inclined to a decision. After a further exchange with the prosecutor, the grand juror indicated that he or she was willing to do the job of issuing an indictment only if the evidence established "probable cause," even if he or she had personal feelings about it.

A different grand juror then disclosed that he or she had evicted a man who was affiliated with the Norteños from a property and that the juror had learned about the incident from this man. But the grand juror also indicated that he or she could set aside

4

"anything related to the situation," do the job of being a grand juror, and issue an indictment only if the prosecutor presented evidence establishing probable cause.

Next, a grand juror indicated that he or she was needed to take care of a grandson for the next three weeks while his or her daughter went to work and that it would be a hardship to continue to sit on the grand jury. The prosecutor excused this grand juror since service would impose hardship on the grand juror and his or her family.

The prosecutor instructed the jurors on the probable cause standard and told them that they must decide all factual questions based on the evidence received in the proceeding and "not from any other source." She told the jurors that her remarks were not evidence. The prosecutor instructed the jurors that they "must judge the testimony of each witness by the same standards, setting aside any bias or prejudice [they might] have."

Two alternates were seated on the grand jury, bringing the total number of jurors seated on the grand jury to 19. The total number of grand jurors at the proceedings was 23.

Much later in the proceedings, during the presentation of evidence, a grand juror indicated that he or she knew the DJ in a video being shown to the jury and that the DJ was the person whom the juror had mentioned earlier and from whom the juror had heard about the incident. Then, outside the presence of the other grand jurors, the grand juror—apparently the same grand juror who had spoken up at the beginning of the proceedings—further explained that he or she had gone "through an eviction process with him" and knew that he was affiliated with the Norteños. The grand juror told the prosecutor: "My heart rate totally jumped and it makes me way more uncomfortable than I was. I was totally comfortable this whole time. . . . [I]t kind of weirds me out a little bit." The prosecutor asked whether the grand juror could consider only "the competent evidence, which is the sworn testimony of witnesses and these exhibits . . . , in reaching [his or her] determination." The grand juror indicated that he or she might be affected by

5

"having gone through the eviction process and knowing his [gang] affiliation" and that it would be hard to set that aside. The prosecutor excused the grand juror, explaining that she "need[ed] people who can separate everything and be impartial."

Back in the presence of the remaining grand jurors, the prosecutor told them: "What ended up happening is some information came up obviously as we were watching this that raised some concerns for one of the grand jurors about their ability to set aside things that they'd maybe heard about this case. And I'll just remind everybody that it's your job as grand jurors to evaluate this case based only on what's considered competent evidence, which is the evidence of the sworn testimony of the witnesses and the exhibits that have been introduced."

Later in the proceedings and outside the presence of the other grand jurors, another grand juror told the prosecutor that he or she knew a Sureño and had "friended him on Facebook" but had not actually spoken to him since high school. The juror had not previously heard about this case and had no reason to believe that the person, who the grand juror thought was in jail at that time, was involved in this case. The juror stated, "I only keep him friended on Facebook because it's kind of funny, it amuses me when he gets out of jail." The juror did not think the relationship would affect his or her ability to make a decision regarding an indictment based on only the evidence.

The grand jury returned an indictment charging petitioner with the following crimes: two counts of murder (§ 187, subd. (a)) (counts 1 & 2); street terrorism (§ 186.22, subd. (a)) (count 3); assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (a)) (count 4); and conspiracy to commit murder (§ 182, subd. (a)(1)) (count 5). The indictment alleged special circumstances with respect to counts 1 and 2, including the circumstance under section 190.2, subdivision (a)(22), which states: "The defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities

of the criminal street gang." With respect to counts 1, 2, 4, and 5, the indictment alleged that the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)). With respect to counts 1, 2, and 5, the indictment set forth various firearm enhancement allegations under section 12022.53. A corrected indictment, filed the same day, reflected the deletion of the multiple-murder special circumstances allegation (§ 190.2, subd. (a)(3)) attached to count 2 and the retention of the multiple-murder special circumstances allegation attached to count 1.

In denying the motion to dismiss pursuant to section 995, the trial court found among other things that although the prosecutor had violated section 939.5 by excusing or dismissing three grand jurors, there was an insufficient showing of prejudice to compel a dismissal. The court noted the unanimous vote in favor of indictment (19 to zero).

## II

### *Discussion*

A. *Law Governing Grand Jury Proceedings and the* Avitia *Decision*

"During selection of the grand jury, section 909 authorizes 'the court' to 'excuse[] [a juror] from such service' for lacking certain qualifications."[3] (*Avitia*, *supra*, 6 Cal.5th

---

[3] Section 910 provides: "No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when *made by the court for want of qualification*, as prescribed in Section 909." (Italics added.) Section 909 states: "Before accepting a person drawn as a grand juror, the court shall be satisfied that such person is duly qualified to act as such juror. When a person is drawn and found qualified he shall be accepted unless *the court*, on the application of the juror and before he is sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of the Code of Civil Procedure." (Italics added; see § 893 [competency to act as grand juror].) "An eligible person may be excused from jury service only for undue hardship, upon themselves or upon the public, as defined by the Judicial Council." (Code Civ. Proc., § 204, subd. (b); see Cal. Rules of Court, rule 2.1008(d).) One reason for excusing a juror based on undue hardship is that "[t]he prospective juror has a personal obligation to provide actual and necessary care to another, including sick, aged, or infirm dependents, or a child who requires the prospective juror's personal care and attention, and no comparable substitute care is either available or practical without imposing an undue economic hardship on the

at p. 492; see § 910.)  "After selection, section 939.5 authorizes 'the foreman of the grand jury' to 'direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire.'  Section 935 authorizes the prosecutor to 'giv[e] information or advice relative to any matter cognizable by the grand jury.'  But no provision authorizes a prosecutor to dismiss a grand juror . . . ."[4]  (*Avitia*, *supra*, 6 Cal.5th at p. 492.)  Thus, although "mere influence over the composition of the grand jury is not impermissible" (*id*. at p. 498), "a prosecutor's dismissal of a grand juror violates section 939.5."  (*Id*. at p. 492.)

In *Avitia*, a prosecutor had "questioned and dismissed a grand juror outside the presence of other jurors and the trial court" (*Avitia*, *supra*, 6 Cal.5th at p. 488), and "the resulting grand jury [had then] returned an indictment against [Avitia]."  (*Ibid*.)  "Before trial, Avitia moved to set aside the indictment under Penal Code section 995 on the ground that the prosecutor's dismissal violated his constitutional and statutory rights to an impartial and independent grand jury" (*ibid*.), and the trial court denied the motion.  (*Ibid*.)

In *Avitia*, the California Supreme Court held that "a prosecutor's dismissal of a grand juror violates section 939.5 [because] only the grand jury foreperson may dismiss a grand juror."  (*Avitia*, *supra*, 6 Cal.5th at p. 488)  The court also determined that "a defendant may seek dismissal of an indictment on the ground that the prosecutor violated section 939.5 by filing a pretrial motion under section 995, subdivision (a)(1)(A)" (*ibid*.) and that "[i]n order to prevail on such a motion, the defendant must show that the error

---

prospective juror or person cared for."  (Cal. Rules of Court, rule 2.1008(d)(7).)  All further references to rules are to the California Rules of Court.

[4] "The district attorney of the county may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by the grand jury, and may interrogate witnesses before the grand jury whenever he thinks it necessary."  (§ 935; see § 934.)

reasonably might have had an adverse effect on the impartiality or independence of the grand jury." (*Id*. at pp. 488-489.)

The Supreme Court in *Avitia* concluded that the section 995 motion had been properly denied "[b]ecause Avitia ha[d] not shown that the error reasonably might have had an adverse effect on the impartiality or independence of the grand jury." (*Avitia*, *supra*, 6 Cal.5th at p. 489) The grand juror who was ultimately dismissed by the prosecutor "explicitly acknowledged that he could not fairly evaluate the case, and the prosecutor dismissed that juror outside the presence of other jurors." (*Ibid*.)

In *Avitia*, the Supreme Court explained that section 995, subdivision (a)(1)(A), "allows a defendant to pursue a motion to set aside an indictment where the defendant alleges that a prosecutor's violation of section 939.5 has prejudiced a substantial right." (*Avitia*, *supra*, 6 Cal.5th at p. 494.) It declared that "a right is substantial when denial of the right results in a denial of due process." (*Ibid*.) The court observed that "[a] prosecutor's violation of section 939.5 . . . can threaten the basic function of the grand jury as ' "a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor." ' [Citation.]" (*Id*. at p. 495.) It made clear that "[a]lthough not every prosecutorial violation of section 939.5 is reason to set aside an indictment, an indictment must be set aside where the violation results in the denial of a substantial right. [Citations.]" (*Ibid*.) The court explicitly held that "a defendant can proceed by a section 995(a)(1)(A) motion to set aside an indictment on the ground that a section 939.5 violation substantially impaired the impartiality and independence of the grand jury." (*Ibid*.) But the burden was on the defendant to "show that the section 939.5 violation reasonably might have had an adverse effect on the impartiality or independence of the jury." (*Ibid*.)

Accordingly, "[w]hen a defendant seeks to set aside an indictment before trial under section 995(a)(1)(A) on the ground that the prosecutor violated section 939.5, the indictment must be set aside only when the defendant has shown that the violation

9

reasonably might have had an adverse effect on the independence or impartiality of the grand jury." (*Avitia*, *supra*, 6 Cal.5th at pp. 497-498.) The Supreme Court explained: "[O]utside a narrow category of errors that 'by their nature constitute a denial of a substantial right' and hence require dismissal 'without any showing of prejudice,' a defendant seeking to set aside an indictment before trial must show that an error 'reasonably might have affected the outcome.' [Citation.] This showing is less onerous than the 'reasonably probable' showing required to prevail on a similar motion after trial, when interests in finality are greater. [Citation.]" (*Id.* at p. 497.) The court explicitly stated, however, that "a section 939.5 violation is 'not inherently prejudicial.' " (*Ibid.*)

With respect to petitioner Avitia, the Supreme Court found that he had not made the requisite showing. It determined that the prosecutor's dismissal of a juror "helped to ensure the grand jury's impartiality by removing a potential juror who said he could not be impartial." (*Avitia*, *supra*, 6 Cal.5th at p. 498.) It distinguished the case from other cases "where the prosecutor was actively involved in the selection of grand jurors or excused a grand juror in the presence of other grand jurors." (*Ibid.*) The court stated: "In those cases, the prosecutor's actions could have led grand jurors to believe they were beholden to the prosecutor during the decisionmaking process. (See *De Leon v. Hartley* (N.M. 2013) 316 P.3d 896, 901 (*De Leon*) [setting aside an indictment where the district court permitted the prosecutor to select the grand jury without the court's involvement]; *Williams v. Superior Court* (2017) 15 Cal.App.5th 1049, 1061 [setting aside an indictment where '[t]he prosecutor's actions supplanted the court's role in the proceedings and, because the excusal colloquy took place in front of the other jurors, allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request'].)" (*Ibid.*)

As to grand jury independence, the Supreme Court found that the prosecutor's dismissal of the juror outside the other grand jurors' presence "reduced the likelihood that the independence of the remaining grand jury was impaired." (*Avitia*, *supra*, 6 Cal.5th at

10

p. 499.)  The court further reasoned:  "The other members had no reason to think that the prosecutor, as opposed to the foreperson, dismissed [the juror].  On the record before us, the foreperson was the only grand juror who could have known that he was not the one who removed [the juror], and even the foreperson did not necessarily know it was the prosecutor who had done so."  (*Ibid*.)  Consequently, the court concluded that Avitia had "not shown that the error reasonably might have affected the impartiality or independence of the grand jury in an adverse manner."  (*Ibid*.)

The Supreme Court emphasized in *Avitia* that "prosecutors must be mindful of the dictates of section 939.5 and conform their conduct accordingly."  (*Avitia*, *supra*, 6 Cal.5th at p. 499.)  The court agreed "with the New Mexico high court's admonition that the 'entity charged with the actual selection and excusal of grand jurors is of paramount importance to the process.  As such, the statutory provisions assigning that role . . . should be seen as mandatory, not directory, because they are critical to ensuring that the process of impaneling a grand jury is impartial and free of unfair influences.  [Citations.] [¶] . . . [¶] The manner in which grand jurors are selected and excused goes to the very heart of how the public views the integrity of the grand jury system. . . . [¶] . . . [¶] . . . And if the integrity of the grand jury is called into question, there is little hope that the public at large, or the accused in particular, will view the grand jury as capable of returning well-founded indictments or serving as a realistic barrier to an overzealous prosecution.' (*De Leon*, *supra*, 316 P.3d at pp. 900–901.)"  (*Ibid*.)  The Supreme Court had stated in an earlier case:  " 'A grand jury should never forget that it sits as the great inquest between the state and the citizen, to make accusations only upon sufficient evidence of guilt, and to protect the citizen against unfounded accusation, whether from the government, from partisan passion, or private malice.' [Citation.]"  (*Johnson v. Superior Court* (1975) 15 Cal.3d 248, 254 (*In bank*); see *id*. at p. 255 [holding that "when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and

11

existence, so that the grand jury may exercise its power under the statute to order the evidence produced"]; see also § 939.71.)

B. *Analysis*

Similar to the actions of the prosecutor in *Avitia*, the prosecutor in this case affected the composition of the grand jury by excusing three jurors. Those actions clearly violated section 939.5. (*Avitia*, *supra*, 6 Cal.5th 486, 488, 492.) As to any juror who appeared to be partial, the prosecutor should have instead "made [her] concerns about [the juror] known to the foreperson, who in turn could have directed the juror to retire in accordance with section 939.5." (*Id*. at p. 492; see § 935.) Further, the prosecutor had no authority to excuse a juror for hardship. (See §§ 909, 939.5; see also *ante*, fn. 3.) Thus, the question is whether the indictment was required to be set aside because of the prosecutor's actions.

As to the two jurors who were excused after they indicated that they could not necessarily be fair or impartial—one juror because he or she had Norteño family members involved in the case and the other because he or she had had to evict a Norteño gang member who later appeared in an evidentiary video shown to the jurors—there is a high probability that the foreperson ultimately would have removed them upon advice from the prosecutor to do so. (See *Avitia*, *supra*, 6 Cal.5th at p. 498.) Moreover, their removal helped to ensure the grand jury's impartiality. (*Ibid*.)

Petitioner complains that the first grand juror who was dismissed "may have been partial in [his] favor and thus [the] dismissal was to [the] Real Party's benefit." The juror's potential bias in petitioner's favor does not demonstrate that the improper dismissal "reasonably might have had an adverse effect on the impartiality or independence of the grand jury." (*Avitia*, *supra*, 6 Cal.5th at p. 489; see *id*. at pp. 495, 497-498.) To the contrary, the dismissal served to ensure the impartiality of the grand jury.

12

Although it was the trial court, not the prosecutor, who was empowered to excuse a grand juror from service for undue hardship (see *ante*, fn. 3), we see no indication that the prosecutor's action of excusing a juror on that ground, in and of itself, reasonably might have had an adverse effect on the independence or impartiality of the grand jury as ultimately constituted. An improper juror excusal is not inherently prejudicial. (See *Avitia*, *supra*, 6 Cal.5th at p. 497.)

In support of his argument that his section 995 motion should have been granted, petitioner cites *Williams v. Superior Court* (2017) 15 Cal.App.5th 1049 (*Williams* I), review granted December 13, 2017, S245314 and further action deferred pending decision in *Avitia*, *supra*, 6 Cal.5th 486, S245314. (See rule 8.1115(e).) After deciding *Avitia*, the Supreme Court did not dismiss review in *Williams I* (see rule 8.528(b)), which would have made the appellate court's issuance of a peremptory writ of mandate the final decision. (See rule 8.528(b)(2); cf. *Jackson v. Superior Court* (2018) 25 Cal.App.5th 515, 544 [denying writ petition] (*Jackson*), review granted September 19, 2018, S250995, held for *Avitia*, and review dismissed April 24, 2019, S250995.) Rather, the Supreme Court transferred the matter to the appellate court with directions to vacate its decision in *William I*, *supra*, S245314 and reconsider the cause in light of *Avitia*. (<https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2236213&doc_no=S245314&request_token=NiIwLSIkTkw4W0BJSCI9TE9IQEg0UDxTJyNOSztSMCAgCg%3D%3D> [as of Oct. 9, 2019], archived at: <https://perma.cc/5GUB-Z3ZK>; see rule 8.528(d).) The appellate court has now vacated *Williams I* and issued its superseding opinion, *Williams v. Superior Court* (2019) 38 Cal.App.5th 1022 (*Williams II*). *Williams I* is no longer citable.

In *Williams II*, the Third District Court of Appeal again issued a peremptory writ of mandate, directing the superior court to vacate its order denying the petitioner's motion to dismiss the indictment and enter a new order granting the motion. (*Williams II*, *supra*, 38 Cal.App.5th at p. __ [251 Cal.Rptr.3d 287, 296].) The appellate court

concluded that the deputy district attorney's improper excusal of a juror for economic hardship and the "corresponding reduction of the required number of jurors reasonably might have had an adverse effect on the impartiality or independence of the jury." (*Id*. at p. ___ [251 Cal.Rptr.3d 287, 296].)

In *Williams II*, the appellate court explained that in its "previous opinion, [it had] stated that by deciding that Juror No. 15 should be excused for hardship, the deputy district attorney used authority of the judicial branch." (*Id*. at p. ___ [251 Cal.Rptr.3d 287, 295].) It pointed out that "the prosecutorial overreach occurred in the presence of the grand jurors and allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request." (*Id*. at p. ___ [251 Cal.Rptr.3d 287, 295].) The appellate court stated that it was "unclear from the limited record before [the court] whether Juror No. 15 should have been excused for 'undue hardship,' assuming that was a permissible result at this stage in the proceedings. (See Code Civ. Proc., § 204, subd. (b).)" (*Id*. at p. ___ [251 Cal.Rptr.3d 287, 295].) The court found that the prosecutor had "asserted direct control over the composition of the grand jury" (*ibid*.) and that "[t]he fact the excused juror was not replaced suggests the court was not made aware of what happened, effectively preventing the drawing of another grand juror who might have impacted deliberations." (*Ibid*. [251 Cal.Rptr.3d 287, 295].) Although aware that a prosecutor's mere influence over a grand jury's composition is not impermissible (*Williams II*, *supra*, 38 Cal.App.5th at p. ___ [251 Cal.Rptr.3d 287, 295]), the appellate court determined that that "[t]he deputy district attorney's improper display of authority over the grand jury went to the very structure the Legislature has provided to keep these constitutional fixtures necessarily independent. [Citation.]" (*Id*. at p. ___ [251 Cal.Rptr.3d 287, 296].)

14

In this case, unlike *Williams* II, before presentation of the evidence began, two alternates were seated as members of the grand jury, replacing the two excused jurors.[5] It also appears that the third juror excused during the presentation of evidence was replaced with an alternate since the trial court observed that all 19 grand jurors voted for indictment.[6]

Although "[a]n indictment cannot be found without the concurrence of at least" the statutory minimum number of grand jurors (§ 940; see also § 888.2), there has been no showing that the indictment was defective for failing to meet this requirement. There is nothing in the record to suggest that the grand jury as ultimately composed was not properly constituted or contained any jurors who were possibly biased or partial. Nothing in the record indicates that the prosecutor might have skewed the grand jury's ultimate composition in favor of the prosecution by excusing the three jurors (see *Avitia*, *supra*, at p. 495) or improperly affected the grand jury's subsequent decisionmaking process. (See *id*. at p. 498.)

Petitioner nevertheless maintains that the prosecutor's conduct resulted in the jurors' having the perception that she exercised control over the operation and functions

[5] The number of persons constituting a grand jury is established by statute. (See §§ 888.2, 908.) Section 908 provides in pertinent part: "If the required number of the persons summoned as grand jurors are present and not excused, the required number shall constitute the grand jury. If more than the required number of persons are present, the jury commissioner shall write their names on separate ballots, which the jury commissioner shall fold so that the names cannot be seen, place them in a box, and draw out the required number of them. . . . If more of the persons summoned to complete a grand jury attend than are required, the requisite number shall be obtained by writing the names of those summoned and not excused on ballots, depositing them in a box, and drawing as provided above." As applied to a grand jury, the " 'required number' " means (1) 23 "in a county having a population exceeding 4,000,000" (§ 888.2, subd. (a)); (2) 11 "in a county having a population of 20,000 or less, upon the approval of the board of supervisors" (§ 888.2, subd. (b)); and 19 "in all other counties." (§ 888.2, subd. (c).)

[6] Section 908.1 provides that "[a] person selected as a grand juror to fill a vacancy pursuant to this section may not vote as a grand juror on any matter upon which evidence has been taken by the grand jury prior to the time of the person's selection."

of the grand jury (see *Avitia*, *supra*, 6 Cal.5th at p. 495) and that "any semblance of independence crumbled as she exercised her unbridled authority." Even if the prosecutor exceeded her authority, nothing in the prosecutor's colloquies with the grand jurors or the prosecutor's comments to the jury after excusing the third juror during the presentation of evidence could have reasonably led any juror who remained on the grand jury to believe that he or she was beholden to the prosecution during the decisionmaking process. (See *Avitia*, *supra*, 6 Cal.5th at p. 498.) The prosecutor's consistent theme was that the jurors could consider only the evidence presented and must be impartial. (Cf. *Jackson*, *supra*, 25 Cal.App.5th at p. 542, fn. omitted ["the prosecutor emphasized to the grand jury that any indictment required probable cause and the grand jury had to act independently and impartially in reaching its own determination on that issue"].)

This case is not like the New Mexico case of *De Leon*, cited in *Avitia*. In that case, "[a]fter the initial orientation and swearing in of the grand jurors [once a court jury clerk had deleted some names on a list of 100 potential grand jurors based on hardship reports that she had received], the process of selecting and excusing jurors for individual grand jury sessions was transferred to the district attorney's office with no apparent further involvement by the district court." (*De Leon*, *supra*, 316 P.3d at pp. 897-898.) "[T]here was virtually no record made of the informal excusal process . . . apparently used [by the prosecutor.]" (*Id.* at p. 901.) "[T]he list of those grand jurors who were called for the session of the grand jury that indicted [p]etitioner [De Leon] reflects that several grand jurors were excused—though by whom is unclear. Indeed, the list of grand jurors used by the district attorney's office contains many notations suggesting active involvement by someone within the district attorney's office in deciding who would ultimately serve at the session of the grand jury that indicted [the] [p]etitioner." (*Id.* at p. 898.) In *De Leon*, the Supreme Court of New Mexico held that "when undeniable irregularities in the grand jury process are brought to the court's attention well in advance

16

of trial, . . . a grand jury indictment resulting from that flawed process must be quashed." (*Id*. at p. 901.)  No showing of prejudice was required.  (*Ibid*.)

Unlike *De Leon*, we have a record of what occurred.  In addition, unlike *De Leon*, the California Supreme Court concluded in *Avitia* that "a section 939.5 violation is 'not inherently prejudicial[]' " (*Avitia*, *supra*, 6 Cal.5th at p. 497) and held that "[w]hen a defendant seeks to set aside an indictment before trial under section 995(a)(1)(A) on the ground that the prosecutor violated section 939.5, the indictment must be set aside only when the defendant has shown that the violation reasonably might have had an adverse effect on the independence or impartiality of the grand jury."  (*Id*. at pp. 497-498, see *id*. at p. 495.)  We do not agree that in this case, the prosecutor's actions reasonably might have had an adverse effect on the independence or impartiality of the grand jury.  The record does not suggest that her conduct undermined the grand jury's integrity or its protective role against an overzealous prosecutor.

In light of our conclusions, we cannot say that the prosecutor's actions materially impaired the core function of the grand jury in violation of the doctrine of separation of powers.  (See *In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 ["the separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch."]; see *Loving v. United States* (1996) 517 U.S. 748, 757 ["one branch of the Government may not intrude upon the central prerogatives of another"].)  In addition, we do not find that petitioner's due process rights were violated since it was not shown that he reasonably might have been deprived of a properly constituted, independent, and impartial grand jury.

The section 995 motion was properly denied.

DISPOSITION

The petition for writ of mandate and/or prohibition is denied.

17

_____
ELIA, ACTING P. J.

WE CONCUR:


_____
BAMATTRE-MANOUKIAN, J.



_____
MIHARA, J.




*Ruiz-Martinez v. Superior Court*
H044349

Trial Court:                          Santa Cruz County Superior Court
                                      Superior Court No.:  16CR02326


Trial Judge:                          The Honorable Timothy R. Volkmann



Attorneys for Petitioner:             David J. Cohen

                                      Alexander P. Guilmartin



No appearance for Respondent:



Attorneys for Real Party in Interest: Xavier Becerra,
                                      Attorney General

                                      Gerald A. Engler,
                                      Chief Assistant Attorney General

                                      Jeffrey M. Laurence,
                                      Senior Assistant Attorney General

                                      Laurence K. Sullivan,
                                      Supervising Deputy Attorney General

                                      René A. Chacón,
                                      Supervising Deputy Attorney General



*Ruiz-Martinez v. Superior Court*
H044349